**ANHEUSER–BUSCH, INCORPORATED, Plaintiff,**

v.

**The FLORISTS ASSOCIATION OF GREATER CLEVELAND, INC., et al., Defendants.**

**No. Civ. A. C83–1021.**

United States District Court, N.D. Ohio, E.D.

Oct. 12, 1984.

Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, Paul L. Ahern, Leydig, Voit, Osann, Mayer & Holt, Chicago, Ill., for plaintiff.

Christopher B. Fagan, Patrick R. Roche, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This Memorandum and Order sets forth Findings of Fact and Conclusions of Law in support of this Court's September 20, 1984 Order denying the plaintiff's motion for a preliminary injunction, as required by Fed. R.Civ.P. 52(a).

Jurisdiction rests on 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

## I. FINDINGS OF FACT

A.

The relevant facts are, for the most part, not in dispute. Plaintiff Anheuser-Busch, Incorporated ("A–B") is a Missouri corporation, and the well known brewer of Budweiser beer, having adopted and used the trademark BUDWEISER for beer for over a century.

Defendant The Florists Association of Greater Cleveland, Inc. ("Florists"), is an Ohio not-for-profit organization representing some 300 members who are engaged in the business of selling fresh cut flowers. Under the direction of defendant, Shaffer-Shaffer-Shaffer, Inc., also an Ohio corporation, and Harry G. Shaffer, Jr., president of Shaffer-Shaffer-Shaffer, Inc., and executive secretary of the Florists, the Florists ran a promotional campaign for one week in October of 1982 under the slogan "THIS BUD'S FOR YOU—And 11 More Rosebuds". The Florists' "Sweetest Week" [1] campaign featured advertising in Cleveland's daily newspaper, *The Plain Dealer*, television commercials, and streamers placed in the windows of retail florists. On October 22, 1982, the campaign concluded with an advertisement in *The Plain Dealer* announcing the winners of the "Sweetest Week" contest.

On March 3, 1983, A–B filed a complaint against the Florists alleging trademark infringement, invasion of commercial rights, deceptive advertising, and unfair competition. On February 8, 1984 the Florists filed a motion for summary judgment claiming that there were no disputed issues of material fact, and no liability. On June 7, 1984, after several weeks of additional discovery by A–B, the Florists filed a motion for leave to file a counterclaim. The counterclaim alleges that in the third week of April of 1984 the Florists learned that Budweiser beer cans and "THIS BUD'S FOR YOU" floral cards were being offered to the floral trade by CP Products of Florida under a license between A–B and GROMAN. The Florists further allege that during settlement negotiations, they had proposed a licensing arrangement with A–B under which flowers could be sold in Budweiser cans as floral containers under the slogan "THIS BUD'S FOR YOU". On June 11, 1984 A–B filed a motion for voluntary dismissal without prejudice. A–B claimed that the Florists ceased the use of the "THIS BUD'S FOR YOU" slogan in October of 1982 and that the Florists did not intend to conduct further promotion with the slogan. The Florists opposed A–B's motion for a voluntary dismissal and announced their intention to use the slogan "THIS BUD'S FOR YOU" in connection with their "Sweetest Week" campaign in the fall of 1984. On August 28, 1984 A–B filed its opposition to the Florists' motion

---

1. "Sweetest Day" (the last day of "Sweetest Week") appears to be endemic to northern Ohio. It occurs in the middle of October and provides an opportunity for those who have been remiss on Valentine's Day, Mother's Day, Father's Day, or various and sundry birthdays, to make up for their omissions.

for summary judgment and at the same time moved for a preliminary injunction.[2]

Oral argument was held on September 11, 1984. Both parties presented numerous affidavits and exhibits, and filed post-hearing pleadings.

**B.**

A–B is the owner of United States Trademark Registrations 64,125 for the mark "BUDWEISER" for beer; 922,481 for the mark "BUDWEISER" for beer; 952,277 for the mark "BUDWEISER" for beer and malt liquor and 66,367 for the mark "BUD" for beer.

Sometime prior to 1979 A–B adopted, and for about four years, has been began using the slogan "THIS BUD'S FOR YOU" in connection with the sale of beer. The slogan is not registered by A–B although a trademark application for beer is currently pending in the U.S. Patent and Trademark Office. A–B has expended substantial sums of money, time and effort in the advertising and promotion of beer under the marks "BUDWEISER", "BUD" and "THIS BUD'S FOR YOU", and the slogans have become well-known. In addition, A–B has developed a multimillion dollar trademark and brand name licensing program, using "BUD", "BUDWEISER" and "THIS BUD'S FOR YOU" in promoting the sale of nearly every kind of conceivable product from t-shirts to tote bags. A–B's licensees render royalty reports and payments on a quarterly basis to A–B in accordance with their license agreements. In August of 1984 there were some 290 active licensees whose merchandise included various decorative accessories, giftware, paper goods, clothing, housewares, sporting goods, artworks, novelties, desk accessories, toys, games, jewelry and luggage.

Annual revenues generated at the wholesale level have been in excess of $20,000,-000.00 annually since 1982, with retail sales in excess of $40,000,000.00. A–B's licensing royalty revenues for 1983 were in excess of $570,000.00 and are expected to exceed $650,000.00 for 1984.

After viewing hundreds of pictures of various kinds of merchandise, this Court concludes that, although "BUD" and "BUDWEISER" have been used in floral-related promotions, prior to the commencement of this litigation the slogan, "THIS BUD'S FOR YOU", had not been licensed for use in connection with the sale of fresh-cut flowers,[3] nor has A–B ever sold fresh-cut flowers. In short, while there can be no doubt about the strength of A–B's slogan with respect to beer, and its licensed use for the promotion of many other kinds of merchandise, there also can be no doubt about its lack of strength with respect to fresh-cut flowers.

The goods in question are totally unrelated. The dictionary defines beer as a "malted and hopped somewhat bitter alcoholic beverage," a flower as "a shoot of the sporophyte of a higher plant that is modified for reproduction and consists of a shortened axis bearing modified leaves", and the troublesome word "bud" as "a small lateral or terminal protuberance on the stem of a plant that is an undeveloped shoot."[4] It is absurd to believe that any consumer could confuse beer with flowers, even of the underdeveloped variety. Indeed, A–B admits that it suffered no loss of beer sales as a result of the Florists' use of its slogan in connection with "Sweetest Week" in 1982.

Although the Florists intended to capitalize on the slogan which had been popularized by A–B, there is no evidence that they

**2.** Neither the motion for summary judgment, nor the Florists' counterclaim, are under consideration at this time.

**3.** There is a dispute as to whether A–B got the idea for licensing the slogan "THIS BUD'S FOR YOU" in connection with the sale of fresh-cut flowers from the Florists during settlement negotiations in connection with this lawsuit, as alleged in the Florists' counterclaim, or whether

such licensing was being negotiated between A–B and other parties prior to that time. It is clear, however, that A–B did not conclude a formal written license agreement with GRO-MAN (for whom CP Products serves as a distributor) until July of 1983.

**4.** *See Webster's Seventh New Collegiate Dictionary* at 77, 108, 321 (1969).

intended to deceive the public into believing that A–B was connected in any way with their product, namely fresh-cut flowers. Nor was there any evidence of actual confusion presented to the Court. No consumer called any florist asking to be delivered a six-pack; nor did any consumer call A–B seeking to purchase two dozen roses. The marketing channels for the products are totally different. The Florists, in selecting "THIS BUD'S FOR YOU," did intend to capitalize on the familiarity of A–B's slogan. But they did not intend to deceive consumers into believing that the fresh-cut flowers were in fact being marketed by A–B, or that they, the Florists, were marketing beer.

A–B relies heavily on a survey, conducted at a local shopping mall. A total of 472 representative members of the general consuming public (adults between 21 and 65) were shown either the Florists' television commercial, or its July, 1984 newspaper advertisement. Each person was asked 1) who they believed sponsored or promoted the advertisement; and 2) what products they believed were sold by the business that sponsored or promoted the advertisement. Based on their tabulated responses, the study concluded 1) that the phrase "THIS BUD'S FOR YOU" is often perceived to be associated with Anheuser-Busch or BUDWEISER beer; and 2) that when the phrase is used in connection with floral promotion, it is perceived by a significant number of people to be sponsored by BUDWEISER or Anheuser-Busch, specifically 54% of the television viewers, and 14% of the newspaper readers. This Court lends little credence to the results of the survey. While there is nothing inherently wrong with the method employed, the questions posed elicited anticipated, and essentially irrelevant, responses.

The first conclusion establishes only that the slogan is, indeed, a famous mark, an irrelevant fact. The second conclusion establishes little more; the slogan is familiar, but responses such as "It sounds like Budweiser but when you see the flowers you think of FTD", or "Budweiser; Florists; Florists; Budweiser" were counted in the 54% but not in the grand total of 31% attributed to "Flowers or Floral Arrangements". A careful reading of the survey's findings indicates that by far the larger percentage of interviewees, on reflection, realized that the Florists' ads were for flowers, not beer.

There is no likelihood of expansion of either product into the other's line. Even though A–B may license the slogan "THIS BUD'S FOR YOU" to other businesses who may sell flowers, this does not necessarily typify a natural expansion of A–B's product line. Again, A–B did not so license any other business prior to the Florists' use of the slogan.

## II. CONCLUSIONS OF LAW

### A.

To prevail on a motion for a preliminary injunction, a plaintiff must satisfy the four-part test originally formulated in *Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977):

(1) whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the plaintiff has shown irreparable injuries;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by a preliminary injunction.

*Warner v. Central Trust Co., N.A.,* 715 F.2d 1121, 1123 (6th Cir.1983). While these factors are not to be applied in excessively rigid fashion, neither should a court merely apply a "balance of hardships" test. *Friendship Materials v. Michigan Brick, Inc.,* 679 F.2d 100 (6th Cir.1982).

### B.

■ A–B failed to persuade this Court that it can possibly succeed on the merits of its claim. To prevail under either the provisions of the trademark laws of the United States, 15 U.S.C. § 1125(a), or under common law trademark infringement or

unfair competition, as codified in Ohio Rev. Code § 4165.01 *et seq.*, A–B must establish the likelihood of confusion, mistake, or deception.

1.

a.

■ The federal "unfair competition" law, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), was never intended to embody the entire general common law of unfair competition. *La Societé Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 5 (2d Cir.1974). The Sixth Circuit recently has concluded that the proper test for a § 43(a) action is the "likelihood of confusion" standard. *Carson v. Here's Johnny Portable Toilets*, 698 F.2d 831, 833 (6th Cir.1983), citing *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir.), *cert. denied*, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982); *see also Hyatt Corporation v. Hyatt Legal Services*, 736 F.2d 1153 (7th Cir.1984).

In *Carson*, 698 F.2d at 833, and *Frisch's*, 670 F.2d at 648, the court of appeals also established eight foundational factors to be considered in making findings of the likelihood of confusion. Those factors are:

(1) strength of the plaintiff's mark;

(2) relatedness of the goods;

(3) similarity of the marks;

(4) evidence of actual confusion;

(5) marketing channels used;

(6) likely degree of purchaser care;

(7) defendant's intent in selecting the mark; and

(8) likelihood of expansion of the product lines.

■ As indicated in the Findings of Fact, supra Part I–B, A–B's mark is extremely strong with respect to beer and utterly anemic with respect to flowers; the Florists' intent in selecting it for their campaign was undoubtedly to capitalize on its familiarity and popularity; and in appropriating the slogan *in toto* the resulting, alleging infringing language is not merely similar but identical to the original phrase.

On the other hand, the goods are totally unrelated; there is no evidence of any confusion between beer and flowers; there is no evidence of any similarity in the marketing channels for the products; and there is no evidence that, but for the Florists' action, A–B would have expanded its product line from beer to flowers. Not only do the factors favoring the Florists outnumber those favoring A–B by five to three, but the functional significance of those five vastly outweighs the facts favoring the brewer. While A–B may have appropriated the designation "BUD" and the slogan "THIS BUD'S FOR YOU" in connection with the sale of beer, this Court declines to hold that such an appropriation extends to the sale of fresh-cut flowers, an area where the designation "bud" has a widely-recognized meaning of its own. To hold otherwise would be tantamount to recognizing a right in gross, which is contrary to the principles of trademark law. *See The University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.2d 1372 (Fed.Cir.1983).

b.

■ It is not disputed that the parties in the present action are not in competition with each other. In situations where actual competition is not present, Ohio law does not allow an injunction against use of a mark by another unless it can be proved that "confusion of identity might result". *Wurzburger, Hofbrau Aktiengesellschaft v. Shoenling Brewing Company, Inc.*, 331 F.Supp. 497, 506 (S.D.Ohio 1971), citing *National City Bank of Cleveland v. National City Window Cleaning Company*, 174 Ohio St. 510, 190 N.E.2d 437 (1963). Accordingly, the common law claims of Count One are without merit.

2.

■ A–B's Count Two appears to plead trademark dilution. Trademark dilution, however, is exclusively a creature of state statute, and there is no provision in the Lanham Act. Dilution statutes have been enacted in some thirty states, but not in

Ohio. Such statutes represent a policy decision by a state to supplement the rights afforded to trademark owners under the federal statute and common law. Where Ohio has not seen fit to enact such legislation, this Court declines to provide such additional protection.

3.

■ With respect to the product disparagement claim of Count Three, this Court cannot find this case analogous to *Chemical Corp. of America v. Anheuser-Busch, Inc.*, 306 F.2d 433, 437 (5th Cir.1962). There A–B was able to enjoin the defendant's use of "Where There's Life ... There's Bugs" based upon the disparagement of A–B and its slogan. Certainly the promotion of something as wholesome, delectable, and appetizing as a dewy rosebud cannot be said to disparage A–B's slogan or its product. Moreover, A–B alleges no loss of beer sales as a result of the Florists' 1982 "Sweetest Week" campaign, nor any great damage to its $200,000,000 advertising and promotion business by what it describes as the Florists' "scant two weeks worth of effort in a relatively small metropolitan area campaign", which is scheduled to last a week.

In light of A–B's complete failure to persuade this Court of the probability of success on the merits, the other portions of the preliminary injunction test need not be addressed, and the motion for a preliminary injunction is denied.

IT IS SO ORDERED.