794 P.2d 349

PAGE & WIRTZ CONSTRUCTION
COMPANY, a New Mexico
corporation, Plaintiff–Appellant,

v.

Roy SOLOMON, d/b/a Solcor Properties
and d/b/a Hungry Bear and Solcor
Properties, Inc., a New Mexico corpora-
tion, Defendants–Appellees.

No. 17906.

Supreme Court of New Mexico.

June 21, 1990.

Keleher & McLeod, P.A., Charles A. Pharris and Robert H. Clark, and Miller & Wess, Ltd., Roy F. Miller, Jr., Albuquerque, for plaintiff-appellant.

Torres & Lewis, Virgil H. Lewis II, and Robert L. Hilton, Albuquerque, for defendants-appellees.

## OPINION

RANSOM, Justice.

This suit began as a claim for $112,-176.18 due on a contract for restaurant remodeling work performed by Page & Wirtz Construction Company. The owner of the restaurant, Roy Solomon, counterclaimed under the Unfair Practices Act, NMSA 1978, Sections 57–12–1 to –22 (Repl. Pamp.1987 & Cum.Supp.1989) (commonly known as the Unfair Trade Practices Act), alleging that the proffered written contract was a forgery and asserting that the remodeling work instead had taken place under an oral contract. The case was tried to a jury who awarded $156,840.59 to Solomon. Page & Wirtz appeals and we reverse.

In October 1985 Solomon contracted with Page & Wirtz to remodel the Hungry Bear restaurant in Albuquerque. The remodeling was a rush job, intended to be completed in time for a reopening by Thanksgiving, and the conditions at the job site have been described as chaotic. Beginning in January 1986, after completion of the project, Page & Wirtz submitted a series of final bills to Solomon. There were various disputes concerning billing errors and inaccuracies and the final amount due was revised a number of times. However, other than an initial payment of $60,000 made to Page & Wirtz prior to the submission of the final bill, no further payments were made.

During the course of these disputes Page & Wirtz produced a written contract for the remodeling work, with Solomon's signature appearing at the bottom, providing for payment for the work on a cost plus ten per cent basis. Solomon stated that he was in shock when he was given the contract as he had never seen it before and he had not signed it. He later alleged that the remodeling work was undertaken on a cost plus three per cent basis by oral agreement.

Sometime in February 1986 Jack Wirtz of Page & Wirtz Construction Company had received a phone call from Mel Hertz, a senior vice-president at First National Bank in Albuquerque. The bank apparently had financed the remodeling work, and Hertz had called to verify how much Page & Wirtz had been paid to date. Wirtz testified that he informed Hertz of the $60,000 payment, and Hertz told him that considerably more than this had been advanced to Solomon. Solomon later received a call from the bank to ask why the contractors had not been paid. Solomon in turn called Wirtz to complain, believing that it was Wirtz who had initiated the contact with the bank, and believing that the bank had been given inaccurate information regarding Solomon's performance under the remodeling contract. Solomon later wrote the bank expressing his anger over the phone call between the bank and Page & Wirtz. He later claimed that his relationship with the bank deteriorated as a result of that incident.

The parties did not reach an agreement on the final amount due on the completed project and Page & Wirtz eventually brought suit to collect $112,176.18. Solomon answered that the remodeling work was done under an oral contract and the written contract was a forgery. He also counterclaimed for damages under the Unfair Trade Practices Act based only upon the allegedly forged contract.

This case was tried to a jury. During trial, Solomon introduced evidence on damage to his reputation arising from the banker's telephone call to Wirtz, although this issue had not been included in the pleadings. The instructions to the jury included: (1) the Page & Wirtz claim for the balance due on the remodeling work, and (2) Solomon's claims under the Unfair Trade Practices Act. The jury instructions listed four specific acts claimed by Solomon to be an unfair or deceptive practice: (1) that the written contract under which recovery was sought was never agreed upon by Solomon; (2) that the contract bore a forged signature; (3) that the invoices submitted for labor and materials were deceptive and misleading; and (4) that Page &

Wirtz had misrepresented the actual cost of goods and materials. Statements by Wirtz to Solomon's banker were not included. The instructions to the jury itemized Solomon's claims for damages as follows: (1) amounts which Page & Wirtz claimed under the contract that were grossly in error, over-priced, and constituted billing for labor not performed and material never delivered; and (2) damage to Solomon's credit standing and reputation for honesty.

The jury awarded $180,000 to Solomon on his claims under the Unfair Trade Practices Act. The jury, questioned by the court about the basis for the award of damages, replied that the $180,000 award to Solomon was for damage to his reputation. The jury also found that the reasonable cost of construction for the project was $140,772.94 (cost plus three per cent) and found that the remaining unpaid balance was $80,772.94. Deducting the latter figure from $180,000 the court calculated that Page & Wirtz owed Solomon $99,227.06 in damages. The court then multiplied that amount by 1.5 pursuant to Section 57-12-10(B) (court may award up to three times actual damages when trier of fact finds that party willfully engaged in unfair or deceptive trade practice) and added an additional $8,000 as attorney's fees, for a final award to Solomon of $156,840.59. Motions for judgment notwithstanding the verdict and remittitur were denied.

Page & Wirtz argue on appeal that: (1) the court erred in submitting the damage to reputation claim to the jury since the issue was not raised in the pleadings; (2) substantial evidence does not exist to support a finding that Page & Wirtz violated the Unfair Trade Practices Act; and (3) assuming that Page & Wirtz, in some fashion, willfully did engage in an unfair or deceptive trade practice, Solomon failed to establish the existence of any actual damages; thus, his recovery is limited to $300.

■ Regarding the first issue, we point out that when issues not raised by the pleadings are tried by the express or implied consent of the parties, they are

treated in all respects as if they had been raised in the pleadings. SCRA 1986, 1-015(B); *Dale J. Bellamah Corp. v. City of Santa Fe*, 88 N.M. 288, 540 P.2d 218 (1975). Page & Wirtz in this case objected to Solomon's requested jury instruction on damages that included the specific request for damage to Solomon's credit standing and reputation. The objection was based upon the lack of any mention of damage to reputation in Solomon's counterclaim. However, evidence on this issue had already been admitted at trial, without objection, and Page & Wirtz even cross-examined Solomon on the subject. Under these circumstances we think the issue was tried with the implied consent of Page & Wirtz.

However, if the jury was to be allowed to assess damage to Solomon's credit standing and reputation under the Unfair Trade Practices Act, it first must be shown that the conduct which allegedly caused this damage was itself an unfair or deceptive trade practice within the meaning of the Act. The alleged damage to Solomon's reputation stemmed solely from the phone conversation between Solomon's banker and Wirtz. As detailed above, that conversation was not included in the instructions to the jury setting forth the specific acts claimed to be unfair trade practices. However, we do not address whether damage to reputation was therefore introduced as a false damage issue. We approach the issue from the perspective of substantial evidence as argued in the briefs by the parties.

The Unfair Trade Practices Act defines "unfair or deceptive trade practice" as:

> any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person * * * *

NMSA 1978, § 57–12–2(C). This general definition is followed by a nonexclusive list of various examples, none of which appear relevant here with the exception of (C)(11), "making false or misleading statements of fact concerning the price of goods or services...." Page & Wirtz claim that the record lacks substantial evidence that any of the conduct complained of violated the prohibitions of the Act.

■ The standard of review regarding the sufficiency of the evidence to support a jury verdict is well settled. *See Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967) (reviewing court will resolve all disputed facts in favor of the successful party and will indulge in all reasonable inferences in support of the verdict). When a motion for judgment notwithstanding the verdict has been denied, the verdict of the jury will not be disturbed unless unsupported by substantial evidence. *Barnes v. Sadler Associates, Inc.*, 95 N.M. 334, 622 P.2d 239 (1981). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn." *Tapia*, 78 N.M. at 89, 428 P.2d at 628 (citation omitted).

We agree that the record in this case lacks substantial evidence of a violation of the Unfair Trade Practices Act based upon the purported telephone conversation between Solomon's banker and Wirtz. There is insufficient evidence from which to conclude that either false or misleading information had been given to Hertz, and the telephone conversation fails to meet another requirement of the definition of an unfair trade practice, namely that the representation occur in connection with the sale, lease, rental or loan, of goods or services, in the extension of credit or in the collection of debts, by any person in the regular course of his trade or commerce. NMSA 1978, § 57–12–2(C).

■ The only direct evidence concerning the content of the telephone call was the testimony of Wirtz. The bank vice-president, Hertz, was not called upon to testify. Wirtz asserted that the only information he provided the bank was that Solomon had

paid $60,000 on his contract to date, information that was entirely accurate. Solomon testified that when his banker called him, Hertz asked why he had not paid Page & Wirtz the $50,000 he owed them. From this question, Solomon inferred that Wirtz had given the bank incorrect information or in some other fashion had besmirched his reputation. Whatever Solomon's subjective belief, this testimony is insufficient to establish the fact that either false or misleading information had been given to Solomon's banker and no reasonable mind could conclude otherwise. The banker's question may well have been based upon amounts owed to Page & Wirtz in addition to the $60,000 payment. The jury determined that the remaining unpaid balance on the contract was $80,772.94. At trial, Solomon merely stated that he surmised that Wirtz had not informed the bank of the $60,000 payment. Solomon's subjective belief, however, is not a fact from which that inference reasonably may be drawn.

■ Moreover, we cannot say that the telephone conversation occurred in connection with the sale of services, or the collection of debts, in the regular course of the defendant's trade or commerce as required by Section 57–12–2(C). We have only a single New Mexico decision interpreting this provision. In *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 753 P.2d 346 (1988), we decided that even an otherwise isolated incident of prohibited conduct meets the requirements of the provision. *Id.* at 102, 753 P.2d at 348. In the present context, we believe the phone conversation did not occur in connection with the sales of services. The only connection the call had with remodeling services was that the call provided information to the bank on Solomon's payment record. We believe the only manner by which the phone conversation might come within the purview of Section 57–12–2(C) was if the call was an attempt to collect a debt owed for remodeling services. Under different circumstances the call might reasonably be interpreted as an attempt by Page & Wirtz

to bring indirect pressure on Solomon to pay up. But in this case Wirtz did not initiate the call. The bank called Wirtz requesting the information, and Wirtz complied with the request. For this reason, we doubt that Wirtz' response to the banker's question was motivated by business reasons in connection with the remodeling project.

We make no attempt to establish any bright line rule on whether a statement concerning one's trade and commerce, or the payment record of one's clients, occurs in a business context subject to the provisions of the Unfair Trade Practices Act. The decision seems best made on a case by case basis. Whatever the line separating these matters, we believe the facts of this case fall beyond it. Thus, any misrepresentation that may have damaged Solomon's reputation gave rise solely to a cause of action in tort for slander and defamation rather than a private remedy created by the Unfair Trade Practices Act.[1]

■ Substantial evidence does exist of violations of the Unfair Trade Practices Act based upon the other claims, the fraudulent contract and erroneous billing. Solomon testified that the signature on the contract was not his own, and the jury was allowed to compare it to authentic samples of his signature. No evidence was presented on precisely how the contract came to be signed, and no one testified that they witnessed Solomon sign it. Page & Wirtz stated only that it was their standard practice to draft such contracts and mail them to the owner for signature. While susceptible to contrary inferences, this evidence was sufficient for the jury to conclude that the contract was a fabrication. Such action would come within the terms of Section 57–12–2(C)(11), "false or misleading statements of fact concerning the price of goods or services * * * *" The contract could be viewed as a form of fraudulent billing.

■ The claims of deceptive and misleading invoices rests upon a similar footing.

---

**1.** We do not purport to decide in this case whether a plaintiff can recover for damage to reputation under the Unfair Trade Practices Act.

Testimony was given that Page & Wirtz billed Solomon for material used on other construction projects, that the invoices were illegible and other problems. Many of the questionable invoices were modified after Solomon raised objections with Page & Wirtz. The fact that any errors in the billings may have been unintentional does not remove the conduct from the prohibitions of the Unfair Trade Practices Act. *Ashlock*, 107 N.M. at 100–01, 753 P.2d at 347–48.

■ As we have decided, the jury's finding of an unfair trade practice only can be based upon the proffered contract or the erroneous invoices submitted for payment. Therefore, any damages which Solomon has suffered must stem from these actions rather than some other asserted source. There is no evidence that either of these actions resulted in any monetary damage to Solomon. Although we have conjured up one or two possibilities, it is difficult to conceive of a false or misleading statement resulting in damages when the statement is not believed or relied upon. Here, factually, while Solomon complained of various irregularities and problems in the invoices submitted with the final bill for the project, he paid none of them, under protest or otherwise. In addition, no funds were paid to Page & Wirtz under the allegedly forged contract. Solomon stated that he was unaware of the contract until after completion of the project. The initial $60,000 payment already had been made.

The Unfair Trade Practices Act authorizes two types of private remedies. Under Section 57–12–10(A):

A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required.

Under Section 57–12–10(B):

Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

The first remedy under the statute, injunctive relief, expressly is not conditioned upon proof of monetary loss. Any person *likely* to be damaged by an unfair or deceptive trade practice of another may obtain such relief; monetary loss is "not required." Section 57–12–10(A). For example, relief under this provision might be had by one commercial enterprise from the deceptive advertising campaign of another. A competitor might complain that their company could suffer loss of market share and profits because the public might be deceived. *E.g., Anheuser–Bush, Inc. v. Florist's Ass'n of Greater Cleveland, Inc.*, 603 F.Supp. 35 (N.D. Ohio 1984) (brewer denied an injunction against florist's promotional campaign under Ohio Deceptive Trade Practices Act); *Claybourne v. Imsland*, 414 N.W.2d 449 (Minn.Ct.App.1987) (operator of computer sales and service business granted an injunction against competitor's use of deceptive trade name under Minnesota Deceptive Trade Practices Act).

In contrast, recovery of damages under paragraph (B) includes only those persons "who suffer any loss of money or property." The paragraph authorizes recovery of "actual damages" or the sum of one hundred dollars, whichever is greater. Section 57–12–10(B). Such damages might be suffered either by a consumer of goods or services, or the commercial competitor of an enterprise engaged in deceptive trade practices. However, in either case the aggrieved party must produce evidence of

"loss of money or property" as a result of the practice. *Id.*

The record in this case reflects no such loss. Therefore, recovery is limited to one hundred dollars, which may be trebled by the court when the party willfully has engaged in the unfair or deceptive practice. *Id.* We do not address whether any violation here was willful as the question has not been raised. Page & Wirtz requested that if the judgment with respect to the Unfair Trade Practices Act is affirmed, Solomon's damages should be limited to $300.

The decision of the district court is reversed. We remand this case to the district court with instructions to enter an award in favor of Page & Wirtz in the amount of $80,772.94 based upon the unpaid amount due on the remodeling contract, and to enter an award of $300 in favor of Solomon on his claims under the Unfair Trade Practices Act.

IT IS SO ORDERED.

BACA and WILSON, JJ., concur.