# IN THE COURT OF APPEALS STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>July 30, 2018</u>

**NO. A-1-CA-35930**

**GANDYDANCER, LLC,**

       Plaintiff-Appellee,

**v.**

**ROCK HOUSE CGM, LLC,**
**and KARL G. PERGOLA,**

       Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

The New Mexico Law Group PC
Robert Neil Singer
Albuquerque, NM

Adams Corporate Law, Inc.
Addison K. Adams
Santa Ana, CA

for Appellee

Butt, Thornton & Baehr, P.C.
Michael P. Clemens
Rodney L. Schlagel
Rheba Rutkowski
Albuquerque, NM

for Appellants

**OPINION**

**VARGAS, Judge.**

{1}     In this interlocutory appeal, we consider whether the language in NMSA 1978, Section 57-12-10(B) (2005) of New Mexico Unfair Practices Act (UPA) allowing "[a]ny person who suffers any loss . . . as a result of any . . . act or practice declared unlawful by the [UPA to] bring an action[,]" creates a private right of action for businesses seeking to bring suit against competitors for unfair competition practices. Taking into consideration both the plain language of the statute and the UPA's remedial purpose as a consumer protection statute, we hold that a business may sue a competitor under the UPA only if the conduct alleged involves consumer protection concerns or trade practices addressed to the market generally. Because Plaintiff's claims against its business competitor do address such concerns, we affirm.

**BACKGROUND**

{2}     Plaintiff Gandydancer, LLC and Defendant Rock House CGM, LLC are both construction companies providing railroad contracting services to BNSF Railway Company (BNSF). In the spring of 2015, Plaintiff submitted a complaint to the New Mexico Construction Industries Division (CID), alleging Defendant had performed unlicensed construction work in violation of the Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2013).

Following an investigation, Defendant entered into a stipulated settlement agreement with CID agreeing to pay administrative penalties. A week before the stipulated settlement agreement was approved by CID's supervisory commission, Plaintiff sued Defendant in district court raising several claims, including a UPA claim. Plaintiff's complaint alleged that Defendant operated its business without satisfying the mandatory licensing requirements, induced Plaintiff's former employees to divulge confidential trade secrets, and used those trade secrets to convince BNSF to hire Defendant instead of Plaintiff without disclosing to BNSF that it was unlicensed.

{3} Defendant filed a motion to dismiss, asserting Plaintiff had no standing to bring the UPA claim and failed to state any claims upon which relief could be granted. Following a hearing, the district court denied Defendant's motion to dismiss Plaintiff's UPA claim and certified the question of "whether the [UPA] affords private-party standing to business competitors who are both sellers of services, or only to buyers of goods and services" to this Court for interlocutory review. Defendant then filed an application for interlocutory appeal, which this Court granted pursuant to Rule 12-203 NMRA and NMSA 1978, Section 39-3-4(B) (1999).

**DISCUSSION**

{4} Defendant raises three issues on appeal. First, Defendant contends that our prior decisions and the legislative intent of the UPA to protect consumers limits its

grant of standing to "a person who purchased goods or services[,]" notwithstanding the broad language of Section 57-12-10(B) allowing "[a]ny person who suffers any loss of money or property" to bring a claim. Next, Defendant claims Plaintiff has failed to state a viable UPA claim, requiring dismissal with prejudice of its complaint. Finally, Defendant argues that to allow Plaintiff to bring a UPA claim against a competitor for failing to obtain a license would result in an improper usurpation of the government's regulatory authority. We are not persuaded by Defendant's arguments and affirm the district court.

**A.	Standard of Review**

{5}	A business competitor's standing to bring a private right of action under the provisions of the UPA is an issue of first impression in New Mexico. *See First Nat'l Bancorp Inc. v. Alley*, 76 F. Supp. 3d 1261, 1263 (D.N.M. 2014) (acknowledging no New Mexico court had directly decided the issue of competitor standing under the UPA); *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1174 (D.N.M. 2013) (acknowledging undecided nature of competitor standing). Statutory interpretation, as well as a party's standing to litigate a particular issue are both questions of law we review de novo. *Town of Silver City v. Scartaccini*, 2006-NMCA-009, ¶ 11, 138 N.M. 813, 126 P.3d 1177.

**B.      Plaintiff's Standing to Bring a Claim**

{6}      Defendant effectively makes two arguments as to why Plaintiff cannot bring a claim under the plain language of the UPA. First, Defendant argues that the provision in Section 57-10-12(B) allowing "[a]ny person who suffers any loss" to bring a claim is tempered by the legislative intent of the UPA and our prior case law limiting standing to buyers of goods and services. Second, Defendant contends that, while the UPA precludes "unfair or deceptive trade practice[s,]" it makes no mention of unfair competition practices.

**1.      Rules Governing Statutory Construction**

{7}      When interpreting a statute, a court's primary goal is to facilitate and promote the Legislature's purpose. *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 17, 148 N.M. 426, 237 P.3d 728. In discerning that purpose, "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Flores v. Herrera*, 2016-NMSC-033, ¶ 8, 384 P.3d 1070 (internal quotation marks and citation omitted). While the plain meaning rule provides that "statutes are to be given effect as written and, where they are free from ambiguity, there is no room for construction[,]" this rule must be applied with caution, as "a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous)

4

differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶¶ 2, 23, 117 N.M. 346, 871 P.2d 1352. Consequently, courts will reject the literal language of the statute if doing so is necessary to "conform to the obvious intent of the [L]egislature, or to prevent its being absurd." *Id.* ¶ 3; *see also Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 (indicating that the statute must be interpreted in the context of the statute as a whole with an eye toward its purposes and consequences). Finally, we note that "a statute with a remedial purpose must be liberally construed to implement its purpose, and any exception will be strictly construed." *N.M. Dep't. of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 13, 125 N.M. 779, 965 P.2d 363; *see Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 27, 125 N.M. 401, 962 P.2d 1236 (recognizing that when "resolving statutory ambiguities, courts will favor a general provision over an exception. This is especially true when a statute promotes the public welfare" (citation omitted)).

**2.    The UPA**

{8}    The UPA makes it unlawful to employ "[u]nfair or deceptive trade practices . . . in the conduct of any trade or commerce." Section 57-12-3; *see also* NMSA 1978, § 57-12-2(C) (2009) (defining "trade" or "commerce" to include "the advertising, offering for sale or distribution of any services and any property and any

other article, commodity or thing of value, including any trade or commerce *directly or indirectly affecting the people of this state*" (emphasis added)). An "unfair or deceptive trade practice" is a "false or misleading oral or written statement . . . or other representation of any kind knowingly made in connection with the sale . . . of goods or services . . . in the regular course of the person's trade or commerce that may, tends to or does deceive or mislead any person" and includes, among other things, "causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services" and "failing to state a material fact if doing so deceives or tends to deceive[.]" Section 57-12-2(D)(2), (14). "*Any person who suffers any loss of money or property . . . as a result of any employment by another person of a method, act or practice declared unlawful by the [UPA] may bring an action to recover actual damages.*" Section 57-12-10(B) (emphasis added). The Legislature has expansively defined a "person" as it is used in the UPA to include, "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures, or syndicates[.]" Section 57-12-2(A).

**a.    "Any Person"**

{9}    Defendant contends that, while the language of the UPA allowing "any person who suffers any loss" appears to confer standing on Plaintiff, the legislative intent

that the UPA serve as a mechanism to protect consumers excludes Plaintiff from the class of persons entitled to bring a claim under the Act. Plaintiff, by contrast, urges us to look exclusively to the plain language of the Act. We agree with Defendant that, notwithstanding that the plain language of the UPA appears to confer standing to Plaintiff and other similarly situated business competitors, we must consider whether our literal interpretation of the statute is contrary to its obvious intent or renders it absurd. *See Helman*, 1994-NMSC-023, ¶ 2. For this, we look to the public policy behind the UPA. *See First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 12, 345 P.3d 310 ("Every statute is a manifestation of some public policy.").

{10} The UPA represents New Mexico's public policy favoring the resolution of consumer claims and prevention of consumer harm. *See Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶¶ 9, 10, 144 N.M. 464, 188 P.3d 1215 (recognizing that UPA represents "[t]he fundamental New Mexico policy of providing consumers a mechanism for dispute resolution"). Its fundamental purpose is to protect consumers from unscrupulous business practices regardless of whether those consumers are directly or indirectly affected. *See* § 57-12-2(C). "[T]he UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 166 P.3d

7

1091. In furtherance of its purpose, the Legislature authorized an award of attorney fees for the successful prosecution of UPA claims, as it "furthers the public policies of encouraging individuals to pursue their UPA claims[,] . . . reimburs[es] plaintiffs and their counsel for enforcing the UPA[,]" and accomplishes the goal of "encouraging plaintiffs to pursue justice[,]" even where the recoverable amount of damages is small. *Aguilera v. Palm Harbor Homes, Inc.*, 2004-NMCA-120, ¶ 10, 136 N.M. 422, 99 P.3d 672.

{11} Because "the UPA constitutes remedial legislation, we interpret the provisions of [the] Act liberally to facilitate and accomplish its purposes and intent." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 30, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted); *see Maese v. Garrett*, 2014-NMCA-072, ¶ 18, 329 P.3d 713 (acknowledging liberal interpretation of UPA provisions in this Court's prior decisions); *State ex rel. Stratton v. Gurley Motor Co.*, 1987-NMCA-063, ¶ 27, 105 N.M. 803, 737 P.2d 1180 (favoring liberal construction to accomplish legislative intent). The UPA's position in New Mexico as a consumer protection statute entitles it to the broadest possible application, and "[i]t is the task of the courts to ensure that the [UPA] lends the protection of its broad application to innocent consumers." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48, 329 P.3d 658 (internal quotation marks and citation omitted).

{12} Taking into consideration the plain language of the statute and its remedial consumer protection purpose, we reject both parties' proposed interpretations of Section 57-12-10(B), as neither accomplishes the goals of the statute. Defendant's interpretation is overly-narrow in limiting standing to buyers of goods and services, while Plaintiff's overly-broad interpretation confers standing on business competitors regardless of whether the violation was related to trade or commerce "directly or indirectly affecting the people of the state[.]" Section 57-12-2(C). Defendant's interpretation ignores the plain language of the UPA, while Plaintiff ignores its legislative intent. To satisfy both the plain language of the Act, allowing "any person" to bring a claim, as well as the legislative intent to protect the people of the state from being directly or indirectly affected by unscrupulous business practices, we conclude that a business competitor may sue under the UPA provided that the conduct alleged involves trade practices that either implicate consumer protection concerns or are addressed to the market generally.

{13} Our holding is also consistent with our decision in *Lohman* in which we considered the plaintiff's UPA claim against a seatbelt manufacturer for its deceptive representations to a distributor to facilitate car sales to consumers at large. 2007-NMCA-100, ¶ 25. Notwithstanding the attenuated relationship between the manufacturer and consumers, we concluded that "the language of the UPA is capable

9

of encompassing a broad array of commercial relationships, and nothing expressly limits its scope to communications directed at the plaintiff or at the public." *Id.* "[T]he definition of unfair or deceptive trade practice[,]" we noted, "makes no mention of transactions between a claimant and a defendant." *Id.* ¶ 30 (internal quotation marks and citations omitted). Furthermore, it does not "require a misrepresentation *in the course of* a sale between [the] plaintiff and [the] defendant[.]" *Id.* Instead, "it merely requires that a misrepresentation be made *in connection with the sale . . .* of goods generally." *Id.* (internal quotation marks and citations omitted). The term "in connection with" is "designed to encompass a broad array of commercial relationships" that "[do] not suggest that a direct representation, by the defendant to the plaintiff, is a prerequisite." *Id.* ¶ 21. "[B]oth the plain language of the act and the underlying policies suggest that a commercial transaction between a claimant and a defendant need not be alleged in order to sustain a UPA claim."*Id.* ¶ 33. Indeed, the remedial purpose of the legislation as a consumer protection measure is consistent with this broadest possible application. *Id.* ¶ 21.

{14}    Relying primarily on our decisions in *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.* (hereinafter, *SFCS*), 2005-NMCA-051, ¶¶ 17-18, 137 N.M. 524, 113 P.3d 347 and *Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304, Defendant argues that our law is clear that only buyers and not business competitors

have standing to bring claims under the UPA. *SFCS* and *Hicks*, however, are factually distinguishable because they addressed standing in the limited context of disputes between buyers and sellers and did not require us to consider the role of business competitors in the context of the UPA and its policy of preventing "[u]nfair or deceptive trade practices . . . in the conduct of any trade or commerce[.]" Section 57-12-3.

{15}     In *SFCS* we were asked to determine whether a company who supplied custom shutters and installation services to Home Depot could bring a claim under the UPA against Home Depot when Home Depot failed to market and sell the shutters as promised. 2005-NMCA-051, ¶¶ 3-7. Noting that the Legislature treats buyers and sellers differently under the provisions of the UPA, we held, that, "[c]onsistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods or services." Id. ¶¶ 14, 17 (citation omitted).

{16}     Similarly, in *Hicks*, the seller of certain pieces of art brought a UPA claim against an art appraiser who purchased several paintings from the seller after the seller declined to retain the appraisers services to value the art. *Hicks*, 2012-NMCA-061, ¶¶ 4-9, 20. Emphasizing the UPA's purpose as a consumer protection statute, we stated that the UPA requires that "somewhere along the purchasing chain, the claimant did purchase an item that was at some point sold by the defendant[,]" and

concluded that the seller of the art had no standing to bring a UPA claim against the appraiser who acted as a buyer of goods in the transaction. *Hicks*, 2012-NMCA-061, ¶ 20.

{17} Taking into consideration the plain language and legislative intent of the statute and our holding in *Lohman*, however, we conclude that the statements from *SFCS* and *Hicks* limiting standing to buyers of goods and services merely disqualifies the seller, as between a buyer and seller, from bringing suit rather than precludes "any person" whose claim raises consumer protection concerns or trade practices addressed to the market generally. Because neither case addressed business competitor standing under the UPA, neither case controls our analysis here.

{18} Further, courts in other jurisdictions have also used legislative intent paired with statutory interpretation principles, including the liberal construction of remedial statutes, to interpret statutory language authorizing "any person" to bring a state consumer protection claim. *See Eder Bros., Inc. v. Wine Merchs. of Conn., Inc.*, 880 A.2d 138, 149 (Conn. 2005) (holding that a business had standing to sue competitor in unfair practices suit, reasoning that the statute was remedial in character and must be liberally construed to provide protection to both businesses and consumers); *see also S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1099-1100 (D.Nev. 2007) (construing Nevada law granting standing to "any person who is a

12

victim" of consumer fraud and concluding business had standing to sue competitor for consumer fraud). Interpreting a consumer protection statute with language similar to the UPA's grant of standing to "any person" who suffers damages, the Illinois Court of Appeals held, "where the dispute involves two businesses who are not consumers, the proper test is . . . whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns" and noted that the statute was aimed at redressing the injuries suffered when businesses deceive customers. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imps., Inc.*, 546 N.E.2d 33, 40-41 (Ill. App. Ct. 1989).

{19}    Similarly, in *John Labatt Ltd. v. Molson Breweries*, (Mem and Order) 853 F. Supp. 965, (E.D. Mich. 1994), the court considered whether a business competitor had standing to sue under the Michigan Consumer Protection Act, (MCPA) §§19.418(1) to -.418(22) (recompiled at Mich. Comp. Laws § 445.901 to -.922), which provided that "a *person* may bring an action." 853 F.Supp. at 967; *see* Mich. Comp. Laws Ann. § 445.911(A) (2018) (emphasis added); Mich. Comp. Laws Ann. § 445.902(d) (2018) (defining a "[p]erson" as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity"). In holding that a business competitor was entitled to bring a claim, the *Labatt* Court concluded, "Allowing a competitor to bring suit under a

statute designed ultimately to protect the interests of consumers is not a novel approach to enforcement[.]" *Labatt*, 853 F. Supp at 970. "[T]he intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events." *Id.* "If competitor suits are not allowed, [consumer protection statutes are] unlikely to be enforced except in those instances when the Attorney General chooses to pursue an action." *Id.*

{20}     Because Plaintiff's claims offend neither the plain language nor the legislative intent of the UPA, we hold that a business competitor is among the persons allowed to bring an action pursuant to Section 57-12-10(B) if the conduct alleged involves consumer protection concerns or trade practices addressed to the market generally.

**b.     Unfair Competition Claims**

{21}     Defendant next contends that Plaintiff's claim fails because the UPA makes no mention of unfair competition practices. Plaintiff alleges in its complaint that Defendant's unfair competition practices consist of its knowingly making false and misleading statements when it sold its services to BNSF by failing to disclose that it lacked licenses required under CILA to perform the work that was the subject of the BNSF contracts, that Defendant was awarded BNSF contracts as a result of its intentional omissions regarding licensure, and that Plaintiff sustained business losses as a result of Defendant's conduct. Because trade practices prohibited by the UPA

14

include representations that "fail[] to state a material fact if doing so deceives or tends to deceive[,]" Section 57-12-2(D)(14), we conclude that despite Section 57-12-2(D)'s silence regarding unfair competition practices, the language of the UPA defining unfair and deceptive trade practices is broad enough to encompass the wrongful conduct of which Plaintiff complains. *See Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 14, 356 P.3d 531 ("[T]he UPA imposes an affirmative duty to disclose material facts reasonably necessary to prevent any statements from being misleading." (internal quotation marks and citation omitted)). Indeed, while our Supreme Court has never decided the propriety of an unfair competition claim under the UPA, it has previously contemplated that such a claim might be brought under the Act. In *Page & Wirtz Const. Co. v. Solomon*, 1990-NMSC-063, ¶ 22, 110 N.M. 206, 794 P.2d 349, our Supreme Court opined in dicta that a competitor might be a proper party to bring suit for damages under the UPA:

> For example, relief under [Section 57-12-10(A) allowing "any person to obtain injunctive relief] might be had by one commercial enterprise from the deceptive advertising campaign of another. A competitor might complain that their company could suffer loss of market share and profits because the public might be deceived. . . . In contrast, recovery of damages [under Section 57-12-10(B)] . . . might be suffered either by a consumer of goods or services, *or the commercial competitor of an enterprise engaged in deceptive trade practices*.

*Solomon,* 1990-NMSC-063, ¶¶ 21-22 (emphasis added) (citations omitted).

{22} While not binding, we find it difficult to ignore our Supreme Court's acknowledgment that recovery of damages might be had by a business whose competitor engaged in deceptive trade practices. Taking this language into consideration along with our mandate to interpret the UPA broadly, we conclude that, notwithstanding the UPA's failure to mention unfair competition practices, the misrepresentations of which Plaintiff complains are among those contemplated by the UPA.

**3.    Plaintiff's Claim**

{23} In light of our conclusion that a business competitor is among the class of persons entitled to bring a claim under Section 57-12-10(B) of the UPA, we now consider whether the conduct alleged in Plaintiff's complaint involves trade practices that either implicate consumer protection concerns or are addressed to the market generally. In addition to its allegations related to Defendant's failure to disclose to BNSF that it was not properly licensed, Plaintiff's complaint alleges that "[c]onstruction contracting services, including in particular railroad construction and repair, [are] inherently dangerous both for those who perform such services and the general public."

{24} New Mexico statutes, as well as the case law interpreting those statutes, make it clear that New Mexico recognizes a strong public policy against unlicensed

16

contractors. *See Little v. Jacobs*, 2014-NMCA-105, ¶ 12, 336 P.3d 398 (acknowledging that the statute indicates "the [L]egislature casts a harsh eye on contracting without a license" and that caselaw "highlight[s] the [L]egislature's complete intolerance of unlicensed contractors" (internal quotation marks and citation omitted)); *Gamboa v. Urena*, 2004-NMCA-053, ¶ 14, 135 N.M. 515, 90 P.3d 534. CILA is reflective of this policy, as its purpose is to create "*a healthy, ordered market in which consumers may contract with competent, reliable construction contractors*[,]" to avoid "*exploitation of the public* by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license[,]" as well as to prevent unlicensed contractors from profiting at the expense of the public. *Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 14, 111 N.M. 410, 806 P.2d 59 (emphasis added); *see also* Section 60-13-1.1 (1989) ("The purpose fo the [CILA] is to promote the general welfare of the people of New Mexico by providing for the protection of life and property[.]"). The licensure requirements of CILA clearly implicate consumer protection concerns and trade practices addressed to the market generally such that a defendant who knowingly misrepresents its licensure in connection with the sale of goods and services is subject to claims from a competitor who is able to show that it suffered a loss of money or property as a result of the misrepresentation. Given the policy considerations associated with licensure under CILA and with unlicensed

17

contractors in general, the conduct alleged in Plaintiff's complaint involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. We conclude that Plaintiff's complaint is therefore sufficient to entitle it to standing under the UPA.

**C.     CILA Enforcement**

{25}     Defendant next argues that a violation of CILA and its potential for sanctions and monetary penalties preclude recovery under the UPA for the same violations. Consequently, Defendant contends, a UPA claim undermines CILA and threatens its application and enforcement. *See* Section 60-13-9(G) (2013) (authorizing CID to investigate, enforce, and institute legal action to accomplish the provisions set forth in CILA). Defendant argues that Plaintiff's UPA claim effectively usurps enforcement powers that were already statutorily assigned to CID under CILA, and to the attorney general under the UPA. *See* § 57-12-15 (1967).

{26}     Initially, we note that Defendant has failed to point us to any authority that supports its argument that CILA regulatory enforcement is the only recourse available where a contractor performs unlicensed work. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Further, to allow CILA enforcement to infringe upon claims under the UPA is contrary to New Mexico

18

policy favoring the resolution of consumer claims. *See Fiser*, 2008-NMSC-046, ¶¶ 9-10 (recognizing that UPA represents "[t]he fundamental New Mexico policy of providing consumers a mechanism for dispute resolution"). Absent authority providing for CILA's displacement of the provisions of the UPA, we will not interfere with the authority of either statute.

**D.    Motion to Dismiss**

{27}    Finally, Defendant seeks dismissal with prejudice of Plaintiff's UPA claim based on a failure to plead facts sufficient to meet all the required elements. Defendant did not, however, request such relief or present this issue in its application for interlocutory appeal. Defendant therefore has not satisfied the requirements of Rule 12-203, and although we recognize that our scope of review may extend beyond the question presented for interlocutory review, we decline to do so here. *See In re Begay*, 1988-NMCA-081, ¶ 20, 107 N.M. 810, 765 P.2d 1178 (declining to reach the issue where such a ruling "could only be hypothetical or speculative"). As an order denying a motion to dismiss alone is generally not appealable and does not tend to dispose of the merits of the action, we see little wisdom in proceeding to consider the merits of the order with regard to Plaintiff's UPA claim. *Cf. Pub. Serv. Co. of N.M. v. Wolf*, 1967-NMSC-170, ¶ 5, 78 N.M. 221, 430 P.2d 379 (acknowledging that the denial of motion to dismiss is not appealable because it is not a final judgment).

**CONCLUSION**

{28}     We affirm the district court's denial of Defendant's motion to dismiss Plaintiff's UPA claim.

{29}     **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**STEPHEN G. FRENCH, Judge**