**JOHN LABATT LIMITED, Labatt Brewing Company Limited, Labatt's USA, Inc., and Labatt Importers, Inc., Plaintiffs,**

v.

**MOLSON BREWERIES, Molson Breweries, U.S.A. Inc., Miller Brewing Co., Martlett Importing Co., and Molson Breweries of Canada, Ltd., Defendants.**

No. 93–75004.

United States District Court,
E.D. Michigan, S.D.

April 28, 1994.

---

**966**

Byron Gregory, Chicago, IL, Norman Ankers, Detroit, MI, for plaintiffs.

Ethan Horwitz, New York City, Cynthia York, Detroit, MI, for defendants.

### MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

COHN, District Judge.

### I.

This is a trademark and unfair competition case. 15 U.S.C. §§ 1051 et seq. and pendent state claims. Plaintiffs (collectively, "Labatt"), bring this action against defendants (collectively, "Miller") * alleging false designation of origin, false advertising, and unfair competition in violation of the Lanham Act, unfair trade practices under the Michigan Consumer Protection Act, common law unfair competition, tortious interference with prospective business advantage, and injurious falsehood. Now before the Court is Miller's motion under Fed.R.Civ.Proc. 12(b)(6) to dismiss the claim based on the Michigan Con-

---

* In its discussion of the facts, the Court does not distinguish between the various plaintiffs' and defendants' functions in the manufacture, importation, and distribution of beer.

sumer Protection Act.[1] For the reasons that follow, the motion will be denied.

### II.

### A.

Labatt and Miller are both in the business of importing, marketing and selling beer. Labatt and Molson are both Canadian corporations, with American subsidiaries or partners. Labatt imports and sells its beer in the United States. Miller sells domestic beer and imports and sells Molson products through its subsidiaries.

### B.

For the purposes of this motion, the following factual allegations of Labatt are taken as true.

In 1992, Labatt invented a unique process to make what it called ICE BEER. It identified the process as ICE BREWING and the beer which the process makes as ICE BREWED and ICE BEER. Labatt has filed an application in the United States for a patent on the process. Labatt has also applied to register in the United States the marks: LABATT ICE BEER, ICE BEER, ICE, ICE BREWING, and ICE BREWED. No one ever used the marks ICE BEER, ICE BREWED, or ICE BREWING, or developed the process by which ICE BEER is made before Labatt.

Molson and Miller now market their own "ice beers," using in their advertising the terms ICE BEER and ICE BREWED. Molson identifies its products MOLSON CANADIAN ICE DRAFT, BLACK ICE, and CARLING ICE BEER in Canada, and MOLSON ICE in the United States, as ICE BREWED. Miller has introduced a beer called ICEHOUSE which is claimed in advertisements, labels, and packaging to be ICE BREWED. The beers sold under the Miller and Molson names are not made with the Labatt process.

---

1. Miller also moved to dismiss Labatt's claim of injurious falsehood, but withdrew that motion without prejudice in response to Labatt's offer to amend its claim to plead damages with adequate specificity.

## III.

Labatt makes the following claims in its complaint:

Count II[2]: False Designation in Violation of the Lanham Act

Count III: False Advertising in Violation of the Lanham Act

Count IV: Unfair Competition in Violation of the Lanham Act and the Paris Convention

Count V: Unfair Trade Practices under Michigan Consumer Protection Act

Count VI: Common Law Unfair Competition

Count VII: Tortious Interference with Prospective Business Advantage

Count VII[3]: Injurious Falsehood.

## IV.

### A.

Miller has moved under Fed.R.Civ.P. 12(b)(6) for dismissal of Count V for failure to state a claim upon which relief can be granted. Miller says the claim, based on the Michigan Consumer Protection Act (MCPA), Public Act 331, 1976, p. 1164 (amended by Public Act 91, 1984, p. 188) (codified at MSA §§ 19.418(1)–19.418(22)),[4] must be dismissed because Labatt as a competitor lacks standing to bring an action under the MCPA. The MCPA, Miller says, is a consumer protection statute, under which only consumers,[5] as opposed to corporate competitors, have standing to sue. Because Labatt is not suing as a consumer of Miller's products, Miller says, Labatt has no standing to pursue an action under the MCPA.

Labatt responds that it does have standing under the plain language of the MCPA. The MCPA, Labatt says, renders unlawful "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," MSA § 19.418(3), and provides that "a *person* may bring an action to ... [e]njoin ... a person who is engaging or about to engage in" an unlawful method, act, or practice, and may recover actual or statutory damages and reasonable attorneys' fees. MSA §§ 19.418(11)(1)(b), 19.418(11)(2) (emphasis added). "Person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." MSA § 19.-418(2)(c). Labatt says that since it falls under the statutory definition of "person," and because the conduct of which it complains is of the sort contemplated by the statute,[6] it has standing to sue under the MCPA.[7]

### B.

#### 1.

Miller's argument that Labatt does not have standing to sue under the MCPA is based primarily on *Wynn Oil Co. v. American Way Service Corp.*, 736 F.Supp. 746 (E.D.Mich.1990), *aff'd in part, rev'd in part on other grounds*, 943 F.2d 595 (6th Cir. 1991). In *Wynn*, the district court specifically found that a business competitor did not have standing to sue under the MCPA:

the nature, characteristics, and qualities of Mille.'s and Labatt's products. Labatt says Miller intends that purchasers will rely on its confusing misrepresentations. Such allegations concern damage to consumers contemplated by the MCPA. MSA § 19.418(3)(1)(a)–(c).

---

**2.** Count I is entitled "Declaration of Rights," and sets forth Labatt's general theory of the case.

**3.** In the complaint, this count is erroneously labelled Count VII.

**4.** Relevant portions of the statute are attached as Appendix A.

**5.** The Attorney General is also explicitly empowered to bring actions under the MCPA, MSA § 19.418(5).

**6.** Labatt alleges that Miller's actions are likely to confuse, mislead, or deceive the public as to the origin, sponsorship, or approval of Miller's goods, and that they constitute misleading descriptions and representations of fact regarding

**7.** Labatt's claim under the MCPA adds little to its other claims against Miller. Under the MCPA, the clerk of the court is to give notice to Michigan's attorney general when an action is filed under the Act, MSA § 19.418(12), but a plaintiff could notify the attorney general of a claim against a defendant without benefit of the MCPA. The real benefit of adding the MCPA claim, it seems, is that it appears easier to obtain an award of attorneys' fees under the MCPA than under Labatt's other claims.

Defendant counters that Plaintiff has no cause of action under the Act because Plaintiff is not a consumer, but a business. Defendant argues that the Act does not create a private right of action for a business entity in the marketplace seeking to advance its own competitive interests. Plaintiff cites no Michigan case which found a cause of action under circumstances similar to those in the present case, and the Court is unable to find any after careful research. Indeed, one of the few Michigan cases interpreting the Act states:

We are satisfied that a clear legislative intent in enacting the Michigan Consumer Protection Act was to protect *consumers* in their purchases of goods, which are primarily used for personal, family, or household purposes.

*Wynn*, 736 F.Supp. at 757 (quoting *Noggles v. Battle Creek Wrecking, Inc.*, 153 Mich. App. 363, 367, 395 N.W.2d 322 (1986). *Wynn* in turn relied primarily on the opinion of the Court of Appeals of Michigan in *Noggles*, as well as a number of cases from other states with statutes similar to the MCPA. The Court is not persuaded by *Wynn* and the authorities upon which it relied that the MCPA does not create a right of action in a business competitor.

*Noggles* does not address the issue of whether a competitor has standing to sue under the MCPA. The issue in *Noggles* was "whether the clause 'primarily for personal, family, or household purposes'[8] is intended to modify the words 'conduct of business' or the words 'goods, property, or service.'" *Noggles*, 153 Mich.App. at 366, 395 N.W.2d 322. The Michigan Court of Appeals found that the phrase was intended to modify "goods, property, or service," so the MCPA applied to transactions providing goods for personal, family, or household purposes, regardless of whether the defendant's primary business involved providing such goods. *Id.* It does not follow from the holding of *Noggles*, or from the observation in *Noggles* that

"a clear legislative intent in enacting the [MCPA] was to protect consumers" that business competitors do not have standing to bring an action under the MCPA.

The other authorities cited in *Wynn* also do not mandate the conclusion that business competitors do not have standing to sue under the MCPA. *Graham v. Kold Kist Beverage Ice, Inc.*, 43 Or.App. 1037, 607 P.2d 759 (1979), the Oregon Court of Appeals case quoted in *Wynn*, like *Noggles* does not address the issue of who has standing to sue under the relevant consumer protection act.[9] Rather, the issue in *Graham* was whether the statute applied to commercial, as opposed to consumer, transactions. The *Graham* court found that the sale of an ice maker for use in a grocery store was a commercial transaction that did not fall under the Oregon statute. *Graham*, 43 Or.App. at 1040, 607 P.2d 759.

*Louisiana Nat. Leasing Corp. v. ADF Serv.*, 377 So.2d 92, 96 (La.1979), the Louisiana Supreme Court case cited in *Wynn*, also discussed the issue of whether the transaction in question was a "consumer transaction," finding that the lease of an office photocopy machine was not a consumer transaction. Later appellate authority in Louisiana held that the Louisiana Unfair Trade Practices and Consumer Protection Law confers a private right of action on both consumers and business competitors. *Roustabouts, Inc. v. Hamer*, 447 So.2d 543 (La.Ct.App.1984).

*LJS Co. v. Marks*, 480 F.Supp. 241 (S.D.Fla.1979), the Florida case cited in *Wynn*, held that under the Florida Deceptive and Unfair Trade Practices Act only consumers had a private right of action for damages, as distinguished from injunctive relief. *Id.* at 244. Under the Florida act competitors are barred only from bring an action for damages; they may still bring an action for injunctive relief under the statute. *General Time Corporation v. Big Ben*, 1 U.S.P.Q.2d 1239, 1240, 1986 WL 15636 (S.D.Fla.1986). The distinction between actions for damages

---

**8.** The MCPA defines "trade and commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family or household purposes...." MSA § 19.-418(2)(d).

**9.** *Graham* involved the Oregon Unlawful Trade Practices Act, ORS § 646.605 et seq.

and actions for injunctive relief is based on statutory language not contained in the Michigan statute, and the Florida District Court noted that "many jurisdictions have interpreted similar consumer protection statutes to encompass trademark violations that could cause confusion and misunderstanding to the average consumer." *Id.*[10]

The other cases based on Michigan law cited by Miller also do not support its position that the MCPA does not create a right of action in a business competitor. *Gougeon Bros., Inc. v. Hendricks,* 708 F.Supp. 811, 813, n. 1 (E.D.Mich.1988), notes in dicta that the plaintiff appeared to lack standing under the MCPA, where both parties were in the business of selling epoxy sealants to boatbuilders, emphasizing the language from *Noggles* that the MCPA was designed to protect consumers "in their purchases of *goods which are primarily used for personal, family, or household purposes.*" *Id.* (quoting *Noggles,* 153 Mich.App. at 367, 395 N.W.2d 322) (emphasis added in *Gougeon* ). The dicta appears to be based on the fact that no consumer transaction was involved, rather than the relationship of the parties as competitors.

*Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009 (W.D.Mich.1987) is even farther removed from the circumstances here. The case involved migrant farmers who sued the farm and individuals who employed them for forcing the farmers to pay rent for uninhabitable housing. The case raised no issue related to whether business competitors have standing to sue, and "construed the purposes and construction of the MCPA liberally" to encompass the claim of the migrant farmer plaintiffs against their employers/landlords. *Id.* at 1021.

Miller also directs the Court's attention to *Catallo Associates, Inc. v. MacDonald & Goren, PC,* 186 Mich.App. 571, 465 N.W.2d 28 (1990). The Michigan Court of Appeals in *Catallo* recognized that the MCPA defines a "person" as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity," MSA § 19.418(2)(c), and held that the plaintiff, a "corporate entity," had standing to sue under the MCPA for an allegedly excessive charge by the defendant for the installation of office furnishings because the sale of the furnishings constituted a consumer transaction. *Catallo Associates,* 186 Mich.App. at 572, 465 N.W.2d 28. *Catallo* found that a corporation can purchase goods for its personal use, as defined in the statute, and therefore bring an action as a consumer, but did not consider the issue of whether a corporation has a right of action under the MCPA as a business competitor.

2.

While Miller is correct that apparently no cases explicitly hold that a competitor has standing to sue under the MCPA, several cases have implicitly recognized that the private right of action created by the MCPA is not the exclusive province of the consumer. In *Janda v. Riley–Meggs Industries, Inc.,* 764 F.Supp. 1223 (E.D.Mich.1991), the district court found that an orthopedic surgeon who had conducted a study of the use of breakaway softball and baseball bases could bring an action for false and deceptive advertising practices under the MCPA against the manufacturer and distributor of a detachable base, where the manufacturer and distributor had run advertisements which created the false impression that the orthopedic surgeon endorsed their product. The surgeon was not a consumer of the defendants' product, but showed that he had been damaged by the advertising. The court granted summary judgment in favor of the surgeon's claim under the MCPA. *Id.* at 1231.

*Nintendo of America v. Elcon Industries, Inc.,* 564 F.Supp. 937 (E.D.Mich.1982) was based on a copyright dispute. Here, the plaintiff was a business competitor of the defendant, who claimed the defendant had engaged in unfair trade practices under the

---

**10.** *Wynn* also cites an Ohio case, *Toledo Metro Federal Credit Union v. Ted Papenhagen Oldsmobile, Inc.,* 56 Ohio App.2d 218, 381 N.E.2d 1337 (1978). The Ohio case turns on a statutory definition of a consumer transaction in which the consumer must be an "individual." The Ohio court held that an "individual" must be a natural person under the Ohio Consumers Sales Practices Act. *Id.* at 221, 381 N.E.2d at 1337. Here, the MCPA explicitly defines the "person" who can bring an action under the statute to include corporations and other legal entities.

MCPA by palming off its products as emanating from the plaintiff, and by misappropriating the plaintiff's intellectual property in its Donkey Kong videogame. The district court found that the plaintiff had shown a substantial likelihood of success on its claim under the MCPA, and issued a preliminary injunction in favor of the plaintiff. *Id.* at 944–45.

Implicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events. Allowing a competitor to bring suit under a statute designed ultimately to protect the interests of consumers is not a novel approach to enforcement, and is routine, for instance, in actions under the Lanham Act. 15 U.S.C. § 1125(a). In the context of the Lanham Act, the Sixth Circuit held in *Coca–Cola Co. v. Procter & Gamble Co.*, 822 F.2d 28, 31 (6th Cir.1987):

> Protecting customers from false or misleading advertising ... is an important goal of the statute and a laudable public policy to be served. Under our economic system, competitors have the greatest interest in stopping misleading advertising, and a private cause of action under section 43(a) allows those parties with the greatest interest in enforcement, and in many situations with the greatest resources to devote to a lawsuit, to enforce the statute rigorously. Public policy, therefore, is indeed well served by permitting misrepresentation of quality claims to be actionable under section 43(a).

The MCPA addresses in part the same policy as section 43(a) of the Lanham Act, and that policy is equally well served by allowing suit to be brought under the Act by business competitors.[11] No persuasive authority holds otherwise, and nothing in the text of the statute suggests an intention on the part of the legislature to limit to consumers the right of action created under the MCPA. As Labatt points out, individual consumers who make mistaken purchases based on deceptive trade practices are unlikely to file a suit for consumer fraud. *See* J. McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 2.12[1] at 2–60 (3rd ed.). If competitor suits are not allowed, the MCPA is unlikely to be enforced except in those instances when the Attorney General chooses to pursue an action. MSA §§ 19.418(5)–19.-418(10).

## V.

The Court finds that Labatt does have standing as a business competitor to bring this action under the MCPA. For the reasons discussed, Miller's motion to dismiss is DENIED.

SO ORDERED.

### *APPENDIX A*

#### [No. 331]

AN ACT to prohibit certain methods, acts, and practices in trade or commerce; to prescribe certain powers and duties; to provide for certain remedies, damages, and penalties; to provide for the promulgation of rules; to provide for certain investigations; and to prescribe penalties.

*The People of the State of Michigan enact:*

**445.901  Short title.  [M.S.A. 19.418(1) ]**

Sec. 1. This act shall be known and may be cited as the "Michigan consumer protection act".

**445.902  Definitions.  [M.S.A. 19.418(2) ]**

Sec. 2. As used in this act:

(a) "Documentary material" includes the original or copy of a book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical

---

**11.** The analogy to the Lanham Act is supported by the substantive similarities between the state and federal statutory schemes. *See Janda,* 764 F.Supp. at 1229 ("The provisions of the Michigan statutes [the MCPA] closely parallel those under § 43(a) of the Lanham Act"); *Schreiber Mfg. Co., Inc. v. Saft America, Inc.,* 704 F.Supp. 759, 769 (E.D.Mich.1989) ("the 'likelihood of confusion' standard applicable to the [MCPA] is the same as that involved in federal and state trademark law."). *See also Homeowners Group v. Home Marketing Specialists,* 931 F.2d 1100, 1105, n. 1 (6th Cir.1991) (citing *Schreiber* ).

transcription, or other tangible document or recording, wherever situated.

(b) "Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

(c) "Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article. "Trade or commerce" does not include franchising but does include pyramid and chain promotions as defined in section 28 of Act No. 269 of the Public Acts of 1974, being section 445.1528 of the Michigan Compiled Laws.

**445.903 Unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce; rules. [M.S.A. 19.-418(3) ]**

Sec. 3. (1) Unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful and are defined as follows:

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(b) Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not have.

(d) Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(f) Disparaging the goods, services, business, or reputation of another by false or misleading representation of fact.

(g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.

(h) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services.

(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions.

(j) Representing that a part, replacement, or repair service is needed when it is not.

(k) Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

(*l* ) Misrepresenting that because of some defect in a consumer's home the health, safety, or lives of the consumer or his family are in danger if the product or services are not purchased, when in fact the defect does not exist or the product or services would not remove the danger.

(m) Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

(o) Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

(p) Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

(q) Representing or implying that the subject of a consumer transaction will be provid-

ed promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

(r) Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u) Failing, in a consumer transaction which is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled thereto any deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

(v) Taking or arranging for the consumer to sign an acknowledgement, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

(w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

(x) Taking advantage of the consumer's inability reasonably to protect his interests by reason of disability, illiteracy, or inability to understand the language of an agreement presented by the other party to the transaction who knows or reasonably should know of the consumer's inability.

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(z) Charging the consumer a price which is grossly in excess of the price at which similar property or services are sold.

(aa) Causing coercion and duress as the result of the time and nature of a sales presentation.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

(2) The attorney general may promulgate rules to implement this act pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws. The rules shall not create any additional unfair trade practices not already enumerated by this section.

**445.911 Action by person for declaratory judgment, injunction, or actual damages; class action by person for actual damages; order; hearing; receiver; sequestration of assets; cost of notice; limitations. [M.S.A. 19.418(11) ]**

Sec. 11. (1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

(3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:

(a) A method, act, or practice in trade or commerce defined as unlawful under section 3.

(b) A method, act, or practice in trade or commerce declared to be unlawful under section 3(1) by a final judgment of the circuit court or an appellate court of this state which is either reported officially or made available for public dissemination pursuant to section 9 by the attorney general not less than 30 days before the method, act, or practice on which the action is based occurs.

(c) A method, act, or practice in trade or commerce declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the federal trade commission act, 15 U.S.C. 45(a)(1), in a decision which affirms or directs the affirmance of a cease and desist order issued by the federal trade commission if the order is final within the meaning of section 5(g) of the federal trade commission act, 15 U.S.C. 45(g), and which is officially reported not less than 30 days before the method, act, or practice on which the action is based occurs. For purposes of this subdivision, a method, act, or practice shall not be deemed to be unfair or deceptive within the meaning of section 5(a)(1) of the federal trade commission act solely because the method, act, or practice is made unlawful by another federal statute that refers to or incorporates section 5(a)(1) of the federal trade commission act.

(4) On motion of a person and without bond in an action brought under subsection (3) the court may make an appropriate order: to reimburse persons who have suffered damages: to carry out a transaction in accordance with the aggrieved persons' reasonable expectations: to strike or limit the application of unconscionable clauses of contracts to avoid an unconscionable result; or to grant other appropriate relief. The court after a hearing may appoint a receiver or order sequestration of the defendant's assets if it appears to the satisfaction of the court that the defendant threatens or is about to remove, conceal, or dispose of his assets to the detriment of members of the class.

(5) If at any stage of proceedings brought under subsection (3) the court requires that notice be sent to the class, a person may petition the court to require the defendant to bear the cost of notice. In determining whether to impose the cost on the defendant or the plaintiff, the court shall consider the probability that the person will succeed on the merits of his action.

(6) If the defendant shows by a preponderance of the evidence that a violation of this act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error, the amount of recovery shall be limited to actual damages.

(7) An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date. However, when a person commences an action against another person, the defendant may assert, as a defense or counterclaim, any claim under this act arising out of the transaction on which the action is brought.

[No. 91]

(HB 5118)

AN ACT to amend section 2 of Act No. 331 of the Public Acts of 1976, entitled "An act to prohibit certain methods, acts, and practices in trade or commerce; to prescribe certain powers and duties; to provide for certain remedies, damages, and penalties; to provide for the promulgation of rules; to provide for certain investigations; and to prescribe pen-

alties," being section 445.902 of the Michigan Compiled Laws; and to add section 3b.

*The People of the State of Michigan enact:*

## Sections amended and added; Michigan consumer protection act.

Section 1.   Section 2 of Act No. 331 of the Public Acts of 1976, being section 445.902 of the Michigan Compiled Laws, is amended and section 3b is added to read as follows:

**445.902   Definitions.   [M.S.A. 19.418(2) ]**

Sec. 2.   As used in this act:

(a) "Business opportunity" means the sale or lease of any products, equipment, supplies, or services for the purpose of enabling the purchaser to start a business, and in which the seller represents 1 or more of the following:

( *i* ) That the seller will provide locations or assist the purchaser in finding locations for the use or operation of vending machines, racks, display cases, or other similar devices, or currency operated amusement machines or devices, on premises neither owned nor leased by the purchaser or seller.

( *ii* ) That the seller may, in the ordinary course of business, purchase any or all products made, produced, fabricated, grown, bred, or modified by the purchaser using whole or in part the supplies, services, or chattels sold to the purchaser.

( *ii* ) The seller guarantees that the purchaser will derive income from the business opportunity which exceeds the price paid for the business opportunity; or that the seller will refund all or part of the price paid for the business opportunity, or repurchase any of the products, equipment, supplies, or chattels supplied by the seller, if the purchaser is unsatisfied with the business opportunity. As used in this subparagraph, "guarantee" means a written or oral representation that would cause a reasonable person in the purchaser's position to believe that income is assured.

( *iv* ) That the seller will provide a sales program or marketing program which will enable the purchaser to derive income from the business opportunity which exceeds the price paid for the business opportunity.   This subparagraph does not apply to the sale of a marketing program made in conjunction with the licensing of a federally registered trademark or a federally registered service mark, or to the sale of a business opportunity for which the purchaser pays less than $500.00 in total for the business opportunity from anytime before the date of sale to anytime within 6 months after the date of sale.

Business opportunity, as used in this act, does not include the sale of a franchise as defined in section 2 of Act No. 269 of the Public Acts of 1974, being section 445.1502 of the Michigan Compiled Laws, or the sale of an ongoing business if the owner of that business sells and intends to sell only that single business opportunity.

(b) "Documentary material" includes the original or copy of a book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situated.

(c) "Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

(d) "Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.   "Trade or commerce" does not include the purchase or sale of a franchise, but does include pyramid and chain promotions, as "franchise", "pyramid", and "chain promotions" are defined in Act No. 269 of the Public Acts of 1974, being sections 445.1501 to 445.1545 of the Michigan Compiled Laws.