Helen and Byron **ROBERTSON,**
Plaintiffs,

v.

**STATE FARM FIRE AND CASUALTY CO., Defendant.**

No. 94–CV–10251–BC.

United States District Court,
E.D. Michigan,
Northern Division.

June 20, 1995.

---

Michael H. Fabian, Farmington Hills, MI, for plaintiffs.

Paul H. Johnson, Jr., Southfield, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIM UNDER MICHIGAN CONSUMER PROTECTION ACT

CLELAND, District Judge.

### I. Background

This matter is before the court on defendant's motion for partial dismissal under Fed.R.Civ.P. 12(b)(6). Defendant asserts that plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA") must fail because expressly exempted from the Act's coverage at Mich.Comp.Laws § 445.904(1)(a) and (2)(a) and because the acts complained of do not involve the sale of "goods, property, or service primarily for personal, family or household purposes."

This action arises out of the collapse of a barn belonging to the plaintiffs, Helen and Byron Robertson, on their dairy farm located in Hillman, Michigan. Plaintiffs allege that defendant, through its agent John Knapp, made the following representations to the plaintiffs in 1991: that an insurance policy from defendant would exceed coverage in plaintiffs' existing policy; that all of plaintiffs' insurance needs would be covered; and that defendants would provide the best service possible so plaintiffs would be current with coverage as to all real, personal, and business property needs at the dairy farm location. *Complaint,* p. 2, ¶ 5. Plaintiffs further contend that they relied on these representations in purchasing an insurance policy from the defendant. *Complaint,* p. 2, ¶ 6.

In November, 1993, plaintiffs learned from their mortgage company that their insurance policy with defendants had been cancelled. *Complaint,* p. 3, ¶ 7. Plaintiffs then notified Knapp of this problem and set up a meeting with him to discuss it. At the meeting on November 23, 1993, Knapp rewrote the plaintiffs' insurance policies and made the following representations:

(a) That two new policies of insurance would be issued by Defendant State Farm separately and fully insuring the respective interests of Plaintiff Helen Robertson and Plaintiff Byron Kevin Robertson in the real property, personal property and

equipment, as well as against other business losses;

(b) That the new policy would provide full replacement cost coverage on all of the structures.

(c) That he would determine the full replacement cost of the structures and obtain insurance for said amount;

(d) The new policies would provide for unscheduled equipment and other personal property that was maintained in the barn;

(e) The new policies would provide coverage for business income losses and expenses, including losses and expenses suffered if the cows had to be moved;

(f) The new policies would include milk pipeline coverage;

(g) The cows would be covered under the new policies as business assets if loss or damage occurred to the barn.

*Complaint*, pp. 3–4, ¶ 9.

On February 17, 1994, the barn collapsed, the cows needed to be relocated, the cows suffered illness and injury, and plaintiffs suffered large business losses. *Complaint*, p. 4, ¶ 11. Plaintiffs notified Knapp of the loss and told him that they had not received their new policies. *Complaint*, p. 4, ¶ 12. Knapp told plaintiffs their losses were covered by the current policy. *Complaint*, p. 4, ¶ 13. When plaintiffs later met with their claims adjuster, he informed them that they were not insured and that defendants would not pay for their losses. *Complaint*, p. 4, ¶ 14. Defendants have continued to refuse to reimburse plaintiffs for the losses suffered. *Complaint*, p. 4, ¶ 15.

Plaintiffs' first count sets forth an action in negligence for breach of duties to advise plaintiffs and to properly train their employees. The second count avers misrepresentation and the third avers violation of the Michigan Consumer Protection Act. This motion addresses only Count III, violation of the Michigan Consumer Protection Act.

Oral argument was held in this matter on May 8, 1995, at which time the matter was taken under advisement. On May 9, 1995, the court entered an order allowing plaintiff ten days in which to file a supplemental brief addressing an issue raised in the defendant's reply brief. The court has considered the arguments raised in the original briefs, at oral argument, and in the supplemental brief. Therefore, the matter is fully before the court and ripe for decision.

## II. Standard

The standard to be applied to deciding a motion to dismiss is as follows:

This Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. A complaint need only give 'fair notice of what plaintiff's claim is and the grounds upon which it rests.' A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. 'In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'

*In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (internal citations omitted) (emphasis in original).

## III. Discussion

For the reasons stated below, the motion to dismiss will be granted, not based on the MCPA's statutory exemptions, but rather because the acts complained of do not involve the sale of "goods, property, or service primarily for personal, family or household purposes."

### A. Exemptions

#### 1. § 2(a)'s exemption

Defendant relies on *Kekel v. Allstate Ins. Co.*, 144 Mich.App. 379, 375 N.W.2d 455 (1985), in which the Michigan Court of Appeals held that since the conduct alleged by the plaintiffs fell under § 2043 of the Uniform Trade Practices Act of the Insurance Code, plaintiffs failed to state a claim under the Michigan Consumer Protection Act. The

holding in *Kekel* rested, at least in part, on § 445.904(2)(a)[1] which reads as follows:

(2) Except for the purposes of an action filed by a person under section 11, this act shall not apply to an unfair, unconscionable, or deceptive method, act, or practice which is made unlawful by:

(a) Chapter 20 of Act No. 218 of the Public Acts of 1956, as amended, being sections 500.2001 to 500.2093 of the Michigan Compiled Laws.

Mich.Comp.Laws 500.2001 to 500.2093 is the Unfair Trade Practices Act of the Insurance Code.

Consequently, it appears at first blush that the Michigan Consumer Protection Act does not apply to any conduct described as unlawful under the Unfair Trade Practices Act of the Insurance Code. The acts described as unlawful by the Unfair Trade Practices Act of the Insurance Code are as follows:

(a) Knowingly making any misleading representation or incomplete or fraudulent comparison of any insurance policies, certificates, or contracts of insurers, health care corporations, or health maintenance organizations for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, pledge, assign, borrow on, or convert any insurance policy, certificate, or contract or to take out a policy, certificate, or contract with another insurer, health care corporation, or health maintenance organization.

(b) Employing any method of marketing having the effect of or tending to induce the purchase of insurance through force, fright, or threat, whether explicit or implied, or undue pressure.

(c) Making use directly or indirectly of any method of marketing that fails to disclose in a conspicuous manner that a purpose of the method of marketing is solicitation of insurance and that contact will be made by an insurance agent or insurance company. Mich.Comp.Laws § 500.2005a.

The instant complaint's averments coincide with the above-described activities made unlawful by the Unfair Trade Practices Act. Accordingly, it would appear that the Michigan Consumer Protection Act does not apply to these acts which are "made unlawful by" the Unfair Trade Practices Act. Mich.Comp. Laws § 445.904(2)(a)[2]; *Kekel, supra.*

However, the first phrase of § 2(a) reads "[e]xcept for purposes of an action filed by a person under section 11" and thus alters this result. Although ignored by all published decisions of which this court is aware, § 11's exception from the exemption renders plaintiffs' claim viable.

§ 11 provides:

(1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act or practice is unlawful under section 3.

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

(3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:[3]

Mich.Comp.Laws § 445.911.

Thus, section 11 is *the* section regarding private causes of action brought by consum-

---

**1.** *Kekel,* 144 Mich.App. at 387, 375 N.W.2d 455 ("defendant's conduct as described by plaintiffs would be subject to the Insurance Code of 1956 meeting the criteria of the exemption set out in § 4(2)(a) of the Michigan Consumer Protection Act.").

**2.** The statute requires only that the acts be "made unlawful by" the Unfair Trade Practices Act; it does not require that the acts give rise to a cause of action for money damages under that Act. Mich.Comp.Laws § 445.904(2).

**3.** The statute goes on to list (a) through (c); (a) references any act unlawful under section 3(1), while (b) and (c) address instances where the alleged unlawful act is affirmed by a decision of the courts.

ers. The only other sections addressing who may bring actions under the act (and under what circumstances) are sections 10 and 15. § 10 applies to class actions brought by the attorney general on behalf of citizens of the state, and § 15 extends to county prosecutors the power of the attorney general to bring suit. Mich.Comp.Laws § 445.910, and 445.915, respectively.

§ 11 allows private actions to be brought and § 4(2) excepts actions brought under § 11 from exemption from the Michigan Consumer Protection Act. Therefore, plaintiffs' action is *not* exempted from the act's purview. The act allows private party suits where a state-initiated prosecution would be precluded under Mich.Comp.Laws § 445.904(2)(a) [4]–(g).[5]

Consequently, acts made unlawful by the Unfair Trade Practices Act and the other enumerated statutes under § 2(a) are not subject to the act only where the cause of action is brought under a section other than section 11, *i.e.* brought by the attorney general or by county prosecutors under § 10 or 15, respectively.

Plaintiff asks the court to reach this result via the Michigan Supreme Court case of *Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 415 N.W.2d 206 (1987), *Lawson v. American Security Ins. Co.*, No. 88–CV–10280–BC (E.D.Mich.1989), and *Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603, 327 N.W.2d 805 (1982).

As noted by defendants, *Dix* is not persuasive because it did not squarely address the issue of whether Mich.Comp.Laws § 445.904(1)(a) and (2)(a) exempt actions by insureds against their insurers from the purview of the Michigan Consumer Protection Act. *Dix* addressed class action questions only. *Dix, supra; Def.Br.*, p. 6.[6] Accordingly, it is not authoritative on this issue.[7]

## 2. § 1(a)'s exemption

 Since plaintiffs' cause of action is not exempted from application of the Michigan Consumer Protection Act via § 2(a), the question of whether § 1(a) exempts their claim must be addressed.[8]

§ 1 provides that "[t]his act shall not apply to":

(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this State or the United States.

Mich.Comp.Laws § 445.904(1)(a).

The court in *Kekel* stated that the "insurance industry is under the authority of the State Commissioner of Insurance and subject to the extensive statutory and regulatory scheme, all administered 'by a regulatory board or officer acting under statutory authority of this state.'" *Kekel*, 144 Mich.App. at 384, 375 N.W.2d 455. The court further notes that "the conduct complained of by the plaintiffs in this case is subject to the regula-

---

**4.** As noted earlier, (a) is the Unfair Trade Practices Act under the Insurance Code.

**5.** This conclusion is logical since allowing a suit initiated by the government where the industry is already regulated by governmental entities would be redundant. If regulated, the governmental agency could bring action and would not need the initiation of the attorney general. However, in an area regulated by governmental agencies, suits by private parties for money damages would resolve a problem which could not be achieved through the attorney general's initiative (which is limited to injunctive relief under § 5 unless brought on behalf of a class of individuals under § 10).

It would appear that the exception to exemption provided for § 11 should also include § 10, but does not expressly so include.

**6.** Defendant further points out that the Michigan Court of Appeals case reviewed by the Michigan Supreme Court predated *Kekel* and that neither

the appeals court or supreme court case discussed the propriety of actions by insureds against their insurers under the consumer protection act. *Def.Br.*, p. 6.

**7.** Any implicit recognition of the cause of action, in addressing the propriety of a class action of the same sort, would not even appear to be *obiter dictum*. Obiter dictum is defined as "observations relevant, but not essential, to the determination of the legal questions then before the court." *Dedham Water Co. v. Cumberland Farms Dairy*, 972 F.2d 453, 459 (1st Cir.1992).

**8.** The *Diamond Mortgage* case interpreted § 1(a) and, as noted earlier, the court in *Kekel* also relied upon § 1(a) for its conclusion that plaintiff insureds failed to state a cause of action under the Michigan Consumer Protection Act against their insurer.

tion and scrutiny of the applicable licensing or regulatory authority." *Kekel,* 144 Mich. App. at 384, 375 N.W.2d 455.[9]

However, the inquiry under § 1(a) is not whether the conduct is subject to regulation, but rather whether the conduct is "specifically authorized." Mich.Comp.Laws § 445.904(1)(a). Conduct amounting to misleading or deceptive practices would not appear to be "specifically authorized." *Diamond Mortgage Co.,* 414 Mich. at 617, 327 N.W.2d 805.

The court in *Diamond Mortgage* stated that "[w]hile a license generally authorizes [defendant] to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct." *Diamond Mortgage Co.,* 414 Mich. at 617, 327 N.W.2d 805. The court disagreed with defendant's argument that the exemption was meaningless by explaining that "[w]hile defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to '[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.'" *Id.*

■ The instant case does not present the situation contemplated in *Diamond Mortgage* where the label "misleading" or "deceptive" is sought to be attached to a defendant's conduct which is specifically authorized by a regulatory board. The fact that the instant defendants may be subject to regulation by a board or agency is insufficient to invoke § 1(a)'s exemption. *Diamond Mortgage,* 414 Mich. at 617, 327 N.W.2d 805 (holding that "a real estate broker's license is not specific authority for all the conduct and transactions of the licensee's business.").

Therefore, the court agrees with Judges Churchill and Guy that the *Kekel* case is not

soundly reasoned and that the Michigan Supreme Court would decide differently if given the opportunity. *Lawson, supra,* slip op. at 8, *citing Bridges v. Fire Ins. Co. of Quaker City,* No. 84–3179 (E.D.Mich.1985) (Guy, J.). Accordingly, the court further agrees that *Kekel* can be disregarded. *Grantham and Mann v. American Safety Prods.,* 831 F.2d 596, 608–609 (6th Cir.1987) ("the decision of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless convinced by other persuasive data that the highest court of the state would decide otherwise.' ").

For similar reasons, *Bell v. League Life Ins. Co.,* 149 Mich.App. 481, 485, 387 N.W.2d 154 (1986), must also be disregarded. In *Bell,* the court held that plaintiff could not have stated a claim under the Michigan Consumer Protection Act because insurance companies are "under the authority of the Insurance Commissioner and the extensive statutory and regulatory scheme of the Insurance Code of 1956, all administered 'by a regulatory board or officer acting under statutory authority of this state.' " *Bell,* 149 Mich.App. at 485, 387 N.W.2d 154, *quoting Kekel.*

*Bell* also fails to include in its analysis the first part of the sentence regarding the regulatory board which provides that the "transaction or conduct [be] specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state * * *" No one doubts that the board has authority from the state. The question, however, is whether the conduct alleged to have been taken by the defendant was specifically authorized by the board or officer. If so, the defendant may not be held liable for such action, even if plaintiff contends that such authorized action misled or deceived him or her. If the conduct was not *specifically authorized* by law so administered, then § 1(a)'s exemption does not apply.

This result is buttressed by citation to Mich.Comp.Laws § 500.2047(1) which gives the insurance commissioner the authority to convene trade practice conferences "for the

---

**9.** *Accord, Wynn Oil Co. v. American Way Service Corp.,* 736 F.Supp. 746, 757 (E.D.Mich.1990),

aff'd in part and rev'd in part, 943 F.2d 595 (6th Cir.1991).

purpose of establishing supplementary regulations and rules relating to trade practices." *Id.* These conferences "may be authorized by the commissioner upon his own motion, or upon written application therefor by any insurer or person to whom rulings arising therefrom may be directly applicable." *Id.* In other words, there is a statutory scheme under the insurance code which provides a means for the regulating officer (or board) to "specifically authorize" conduct.

Although it would not be illogical to statutorily provide that an area extensively regulated, like the insurance area, should provide the exclusive remedy for those aggrieved by the regulated, the Michigan legislature has not done so. Here, the Insurance Code does not state that the Unfair Trade Practices Act is exclusive.[10] In fact, the Unfair Trade Practices Act does not appear to provide any remedy at all for private parties, but instead sets forth a scheme to be enforced by the Insurance Commissioner only. Mich.Comp. Laws § 500.2028 (Commissioner as investigator); 500.2029 (hearings before Commissioner); 500.2038 (findings made by Commissioner); 500.2039 (Commissioner issues final orders); 500.2041 (judicial review of Commissioner's orders upon appeal by party affected), *accord, Bell,* 149 Mich.App. at 484, 387

N.W.2d 154 ("While a private party may recover the interest penalty in an action against an insurer [under § 500.2006(4)],[11] there is no implied private cause of action in tort"), *see also, Young v. Michigan Mutual Ins. Co.,* 139 Mich.App. 600, 605, 362 N.W.2d 844 (1984),[12] *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 355 (E.D.Mich.1983).

The court is not persuaded to the contrary by defendant's citation to *Caproni v. Prudential Sec., Inc.,* 15 F.3d 614, 621 (6th Cir.1994) (interpreting Michigan law). In *Caproni,* the court held that the MCPA would not apply to the sale of securities because the exemption under § 1(a) applies if "the conduct is actually regulated." *Caproni,* 15 F.3d at 621. The court supported its decision by noting that other courts "have held that their state's consumer protection statutes do cover claims of securities fraud because their consumer protection statutes, unlike the statute in the instant case, do *not* contain exemptions for conduct regulated or permitted by governmental agencies." *Caproni,* 15 F.3d at 621. This court declines to follow its reasoning since the court in *Caproni* defines the exemption under § 1(a) as applying to conduct "regulated or permitted" and "actually regu-

**10.** In *Kekel,* although the plaintiffs also argued that the Unfair Trade Practices Act contained no language indicating that it provided an exclusive remedy, the court did not address the issue. *Kekel,* 144 Mich.App. at 384–385, 375 N.W.2d 455. Instead, the court redirected the inquiry into whether the Michigan Consumer Protection Act provided a remedy by its own terms. Since the court concluded that it did not, the question of whether both statutes could provide a remedy (i.e. the exclusivity of the Unfair Trade Practices Act) was moot.

**11.** Under this section, a plaintiff in a civil suit may receive 12% interest on any claim refused to be paid by the defendant insurer which is withheld in bad faith, i.e. where the insurer's liability for the loss is not reasonably in dispute. *Medley v. Canady,* 126 Mich.App. 739, 743, 337 N.W.2d 909 (1983). In *Medley,* plaintiff was injured in an auto accident, trial resulted in a verdict in favor of the plaintiff, and the trial court awarded plaintiff 12% statutory interest (on the insurance policy's liability limit) from 60 days after receipt of the police report by the defendant insurer. *Medley,* 126 Mich.App. at 742–43, 337 N.W.2d 909. The court of appeals reversed, finding that the defendant insurer could not have acted in bad faith denial of a claim until a demand had

been made and that a demand requires at least submission of a proof of loss to the insurer. *Medley,* 126 Mich.App. at 744–45, 337 N.W.2d 909.

**12.** The court in *Young* supported its conclusion with citation *Shavers v. Kelley,* 402 Mich. 554, 604, n. 27, 267 N.W.2d 72 (1978) and to Mich. Comp.Laws § 500.2026. § 500.2026 describes "[u]nfair methods of competition and unfair or deceptive acts or practices in the business of insurance, other than isolated incidents, are a course of conduct indicating a persistent tendency to engage in that type of conduct and include * * *" Thus, the court concluded:

There can be no independent cause of action in a particular insurance client's dealing with an insurance company since an insurance client's dealings with an insurance company are of necessity an isolated incident. MCL 500.2026; MSA 24.12026 is designed to give the Commissioner of Insurance authority over certain continuing practices of insurance companies. The insured does not have an independent cause of action.

*Young,* 139 Mich.App. at 606, 362 N.W.2d 844 (some internal citations omitted).

lated." *Id.* However, § 1(a) itself expressly delineates the breadth of its exemption as "transaction or conduct specifically authorized." Regulation and specific authorization are two vastly different concepts. For the reasons noted above, the court believes this specific statutory language should rule the day rather than the broader interpretation given by the courts in *Kekel* and *Caproni.*

## B. Personal, family or household purposes

In its reply brief, defendant argued that "irrespective of whether the Act applies to insurance transactions generally, it does not apply, by its own terms, unless the 'methods, acts and practices' complained of involve the sale of 'goods, property, or service primarily for personal, family or household purposes.'" *Def. Reply Br.,* p. 4, *quoting, Noggles v. Battle Creek Wrecking, Inc.,* 153 Mich.App. 363, 395 N.W.2d 322 (1986). Plaintiff responds by citing *Catallo Assoc., Inc. v. MacDonald & Goren, P.C.,* 186 Mich.App. 571, 465 N.W.2d 28 (1990) and *John Labatt Ltd. v. Molson Breweries,* 853 F.Supp. 965 (E.D.Mich.1994). For the reasons noted below, the court finds the cases cited by defendant and the ultimate principle derived from them, to be more soundly reasoned.

### 1. Defendant's legal support

■ As noted, defendant relies on *Noggles v. Battle Creek Wrecking, Inc.,* 153 Mich. App. 363, 395 N.W.2d 322 (1986). The issue in *Noggles* was "whether the clause 'primarily for personal, family, or household purposes' is intended to modify the words 'conduct of a business' or the words 'goods, property, or service.'" *Noggles,* 153 Mich.App. at 366, 395 N.W.2d 322; Mich.Comp.Laws § 445.902(d). The court found that the clause "primarily for personal, family, or household purposes," modified the words "goods, property, or service." *Noggles, supra.*

In *Noggles,* the defendant wrecking company had agreed that if plaintiff allowed defendant to dispose of its debris, defendant would fill the low spots on plaintiff's farmland with the debris. *Noggles,* 153 Mich. App. at 365, 395 N.W.2d 322. Defendant had argued that the "primarily for personal, family, or household purposes" clause modified

the conduct of business and that it was not "primarily" in the business of supplying goods, property or services for personal, family or household use. *Noggles,* 153 Mich. App. at 366, 395 N.W.2d 322.

The court disagreed, relying on the principle of statutory construction that "a clause is *confined to the last antecedent* unless something in the subject matter or dominant purpose of the statute requires a different interpretation." *Noggles,* 153 Mich.App. at 368, 395 N.W.2d 322 (emphasis in original). The court found this decision supported by the following rationale:

We are satisfied that a clear legislative intent in enacting the Michigan Consumer Protection Act was to protect consumers in their purchases of goods which are primarily used for personal, family, or household purposes. To follow defendant's interpretation of the statute would be to leave a consumer completely without remedy under the statute in any case where a business conducts a substantial *minority* of its transactions with consumers for personal, family or household purposes.

*Noggles,* 153 Mich.App. at 367–68, 395 N.W.2d 322. This court agrees with the analysis set forth in *Noggles.*

### 2. Plaintiffs' legal support

Plaintiffs rely on *Catallo Assoc., Inc. v. MacDonald & Goren, P.C.,* 186 Mich.App. 571, 465 N.W.2d 28 (1990) and *John Labatt Ltd. v. Molson Breweries,* 853 F.Supp. 965 (E.D.Mich.1994). *Labatt, supra* is distinguishable by its own terms. The court in *Labatt* finds *Noggles* inapplicable to the issue before the court because *Noggles* did "not address the issue of whether a competitor has standing to sue under the MCPA." *Labatt,* 853 F.Supp. at 968. Thus, the issue in *Labatt* was limited to whether a business competitor had standing to sue under the MCPA. *Labatt,* 853 F.Supp. at 968. Since the instant plaintiff farmer is clearly not a business competitor with the defendant insurer, *Labatt* has no obvious application.

Even if *Labatt* did apply, the court believes that the narrowing of the issue in *Labatt* was misdirected. Assuming a busi-

ness competitor could have "standing" as the court in *Labatt* held, the competitor would still have to show—as would all other plaintiffs—that the goods or property bought (or services procured) were "primarily for personal, family or household purposes." *Noggles*, 153 Mich.App. at 367–68, 395 N.W.2d 322. Thus, the two issues are complementary and not mutually exclusive. The *Labatt* court's labelling of the issue "standing" and its finding that resolution of the standing issue rendered all other inquiries foregone is not convincing.

The court believes that the reason for such tunneled vision may have been that it is highly unlikely that a competitor would be purchasing goods for "personal, family, or household purposes." This may explain in part why courts have held that the MCPA does not apply to businesses; it would be rare indeed (if even possible) for a corporation to purchase goods for "personal, family or household purposes." The only scenario the court can envision is one wherein a corporation would buy its employees products as a holiday bonus, *e.g.*, televisions, stereos, etc., which will be used by the employees in their respective homes. In such a scenario, it is arguable that the corporation is buying goods for personal, family, or household purposes. Of course, it is also arguable that the corporation bought the goods for the business purpose of passing out a holiday bonus and that the ultimate use by the employees is not relevant to the corporation's purpose. Regardless, ignoring the clause requiring the goods purchased (or services procured) to be for "personal, family, or household purposes" is, in the court's mind, improper.

Nor can the court share the *Labatt* court's confidence in its decision as supported by comparison to the Lanham Act [15 U.S.C. § 1125(a)]. *Labatt*, 853 F.Supp. at 970. The court in *Labatt* found that the Lanham Act allows competitors to bring suit and that the public policy served by allowing them to do so would also apply under the MCPA, especially since interpretation of the MCPA

provisions addressing confusion between products [13] closely parallels that of the Lanham Act. *Id.* However, the *Labatt* court neglects to mention that there is a Michigan Trademark Protection Act which allows competitors to bring suits for precisely the same kinds of practices addressed by the Lanham Act. Mich.Comp.Laws § 429.42. Thus, it is not as if product confusion (and other trademark infringements) will go unredressed absent competitors being given standing to sue under the MCPA.[14] Thus, the *Labatt* court's analogy to the Lanham Act is weak.

■ The court is even less deterred by the holding in *Catallo, supra.* The *Catallo* holding rests on the reasoning that the MCPA defines "person" as including "corporation"; thus, personal goods or services include corporate (or business) goods or services. Specifically, the court states:

> In its brief, Catallo defines 'personal' as 'of or relating to a particular person.' However, 'person' is defined by the Consumer Protection Act as 'a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.' Thus, it is apparent that 'personal,' in the context of the act, should be defined as 'of or relating to a particular person, corporation, trust, partnership, incorporated or unincorporated association or other legal entity.'

*Catallo*, 186 Mich.App. at 573, 465 N.W.2d 28 (internal citation omitted).

The court in *Catallo* then concludes:

> Since the furnishings in this case were intended for the use of M & G's law firm, and since the incorporated law firm is a 'person' under the act, we conclude that the furnishings were primarily for personal use.

*Catallo*, 186 Mich.App. at 573, 465 N.W.2d 28.

"Person" is used in the MCPA in reference to those bringing actions (i.e., plaintiffs) [15] and to those against whom actions will be

---

**13.** Mich.Comp.Laws § 445.903(1)(a)–(c).

**14.** Furthermore, the scope of the MCPA, is much broader than product confusion. Mich.Comp. Laws § 445.903(d)–(cc).

**15.** *E.g.*, Mich.Comp.Laws § 445.911(1)–(7).

brought (i.e., defendants).[16] Since defendant sellers will often be businesses and corporations, the Act would have to include such entities in its definition of "person" as long as the Act continued to refer to potential defendants as "persons." Accordingly, inclusion of corporations and other business entities in the definition of "person" serves a broader purpose and does not really aid the definition of "personal."

Furthermore, § 3a of the Act, which addresses appliance service contracts, defines "company" as "a person engaged in trade or commerce who provides a service contract *to consumers*." Mich.Comp.Laws § 445.903a(1) (emphasis supplied). It would be illogical to find that the legislature's intent was to limit the potential plaintiffs alleging unfair service contract practices to consumers (as expressly provided) while at the same time allowing anyone—consumer or not—to bring suit for unfair practices which did not involve appliance service contracts. The court will not construe the Act to lead to such an absurd result. *Bailey v. City of Lawrence, Ind.*, 972 F.2d 1447, 1452 (7th Cir.1992) ("Courts are bound to construe a statute to avoid absurd results."); *accord, Baum v. Madigan*, 979 F.2d 438, 442 (6th Cir.1992).

Furthermore, *Catallo*'s definition of "personal" ignores the terms surrounding it: family and household. "Under the principle of statutory construction, *noscitur a sociis*, a general term is interpreted within the context of the accompanying words 'to avoid the giving of unintended breadth to the Acts of Congress.'" *Kurinsky v. United States, et al.*, 33 F.3d 594, 597 (6th Cir.1994), *quoting, Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Here, under *noscitur a sociis*, the term "personal" should be read in light of its neighbors, "family" and "household." To view the term in isolation, as the court in *Catallo* did, is to give the very unintended breadth this principle of statutory construction seeks to avoid.

The court believes the Michigan Supreme Court would decide otherwise; consequently, this court is not bound by the decision in *Catallo*. *Grantham*, 831 F.2d at 608–609. This result is buttressed by the following decisions: *Wynn Oil, supra*, 736 F.Supp. at 757 (finding that the protection of the act does not extend to businesses) and *National Union Fire Insurance Co. v. Goodin & Bigelow Construction, Inc.*, No. 1:91–CV–138, 1991 WL 303607 (W.D.Mich.1991) ("The legislative history of the Act indicates that it was designed to protect consumers as opposed to businesses or businesspersons."); *Beaver v. Figgie International Corp.*, 849 F.2d 1472 (6th Cir.1988) (finding that the MCPA "[d]oes not apply to transactions between two merchants.").

### 3. Application of *Noggles*

██ The clause "primarily for personal, family, or household purposes," modifies the words "goods, property, or service." *Noggles*, 153 Mich.App. at 366, 395 N.W.2d 322. Defendant contends that the instant insurance policy governed plaintiffs' business; therefore, the policy was not purchased "primarily for personal, family or household purposes." Plaintiffs respond that they "did not purchase separate policies to cover their business from their personal assets." *Pl. Supp.Br.*, p. 3. "Each policy[17] provided coverage on each Plaintiff's residence, personal property, as well as farm personal property and farm structures." *Pl.Supp.Br.*, p. 3.

Since each policy provided coverage for both residential and commercial property, the court must determine whether the policy's "primary" purpose was domestic or commercial in nature. The instant cause of action involves the commercial aspect of the policy in that plaintiffs seek recompense for lost profits due to the barn's collapse and the attendant illness and injury of the cows. *Complaint*, p. 4, ¶ 11. However, the court must determine whether the purchase of the policy as a whole was primarily for household versus commercial purposes.[18] The court

16. *E.g.,* Mich.Comp.Laws § 445.905(1)–(4).

17. Plaintiffs have separate policies.

18. The court's task would be much easier if this dispute involved the purchase of farm equipment. *Cf., Miller v. Hubbard–Wray Co.*, 52 Or. App. 897, 905–906, 630 P.2d 880, 885 (1981) (finding that purchase of hay baler used in family

finds that the plaintiffs' purpose in purchasing the policies was "primarily" commercial rather than domestic.

The misrepresentations and assurances alleged to have been made by John Knapp as agent of the defendant insurance company focus on the dairy farm rather than the household. *Complaint*, pp. 3–4, ¶ 9 (*e.g.*, (d) barn equipment; (e) business income losses and expenses, including losses and expenses suffered if the cows had to be moved; (f) milk pipeline coverage; (g) cows).[19] Certainly assurances, and generally misrepresentations, are made in response to inquiries. Thus, the plaintiffs' focus in seeking assurances must have been "primarily" upon insuring the dairy farm. Since the coverage sought was not "primarily for personal, family or household purposes," the MCPA does not apply. Mich.Comp.Laws § 445.902(d).

## IV. Conclusion

For the reasons stated above, defendant's motion to dismiss plaintiffs' claim under the Michigan Consumer Protection Act (Count III) is GRANTED.

IT IS SO ORDERED.

cattle farm business was not covered by state unfair trade practices act because it was not "obtained primarily for personal, family or household purposes."), modified 53 Or.App. 531, 633 P.2d 1 (1981); *Rigdon v. Walker Sales & Service, Inc.*, 161 Ga.App. 459, 288 S.E.2d 711 (1982) (finding that purchase of combine used in farming to gather tobacco was not "personalty [ ]

purchased primarily for personal, family or household use" under the Georgia Retail Installment and Home Solicitation Act).

**19.** (a)–(c) are more generalized assurances of complete coverage.